741 S.E.2d 694

The STATE, Respondent,

v.

Raymondeze RIVERA, Appellant.

Appellate Case No. 2010–162706

No. 27220.

Supreme Court of South Carolina.

Heard June 5, 2012.

Decided Feb. 13, 2013.

Rehearing Denied April 3, 2013.

226

228

Keir M. Weyble, of Cornell Law School, Ithaca, New York, and Chief Appellate Defender Robert M. Dudek, of Columbia, for Appellant.

Attorney General Alan M. Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, and Solicitor Christina T. Adams, of Anderson, for Respondent.

Justice KITTREDGE.

This is a direct appeal from a sentence of death. Although Appellant Raymondeze Rivera raises multiple challenges, we are constrained to reverse and grant a new trial based on one—the trial court's error in refusing to allow Appellant to testify during the guilt phase of his trial.

## I.

Appellant was indicted in connection with the death of Kwana Burns, whose body was found lying in the bedroom floor of her home on December 13, 2006. Her death was the result of asphyxiation. The State sought the death penalty against Appellant based on a prior murder conviction. It is stipulated that Appellant was competent to stand trial.

The State presented overwhelming evidence of Appellant's guilt. At the close of the State's case, the trial court properly

informed Appellant of his right to testify or not to testify. Appellant elected to testify, yet counsel refused to call him to the stand. Despite Appellant's persistence, the trial court acquiesced in counsel's decision and refused to allow Appellant to testify. Appellant was convicted of murder and ultimately sentenced to death.

## II.

### A.

### The Colloquy and the Trial Court's Ruling

On appeal Appellant presents a host of challenges. Because we believe the trial court erred in refusing to allow Appellant to testify and that such error is structural, we reluctantly reverse Appellant's murder conviction and death sentence and remand for a new trial.

We begin with the trial court's questioning of Appellant at the close of the State's case:

The Court: We have now reached or are approaching the stage in the trial where you may present your defense. You have the right to claim the protections given to you by the Fifth Amendment to the Constitution of the United States. This amendment states in pertinent part, no person shall be compelled in any criminal case to be a witness against themselves. Do you understand this?

[Appellant]: Yes, sir.

The Court: This means that you cannot be required to testify in this case. You have the right to testify on your own behalf; however, no one can make you testify. This is a personal right, and no one can waive this right except you. Do you understand this?

[Appellant]: Yes, sir.

. . . .

The Court: If you decide to testify, this decision on your part must be freely, voluntarily and intelligently made with knowledge of the protections given to you by the Fifth Amendment and the consequences of your decision to testify. Do you understand that?

[Appellant]: Yes, sir.

The Court: If you decide not to testify, I will instruct the jurors that they cannot give the fact that you did not testify any consideration whatsoever and that there is to be absolutely no prejudices to you because you did not testify. It is left entirely up to you whether or not to testify. Do you understand?

[Appellant]: Yes, sir.

The Court: You may talk with your attorney or anyone else about this, but it will be your final decision—or the final decision will be left entirely up to you. Do you understand that?

[Appellant]: Yes, sir.

The Court: Do you understand what I've explained to you?

[Appellant]: Yes, sir.

The Court: Do you have any questions about what I've explained to you?

[Appellant]: No, sir.

The Court: Have you discussed with your lawyer whether you should testify or not?

[Guardian *ad Litem*]: Excuse me, Your Honor. He just asked if we could have a small break. He needs to go to the restroom and he would like to ask a couple of questions of us.

The Court: Certainly. All right. We'll take a short break. When you're ready to return, of course, let me know.

. . . .

The Court: Is the [Appellant] ready to proceed?

[Guardian *ad Litem*]: He is, Your Honor. He had a couple questions and we've answered them, and he wishes to proceed on to finish answering the questions.

The Court: Very good. . . . Have you discussed with your lawyer whether you should or you should not testify?

[Appellant]: Yes, sir.

The Court: Do you wish to testify?

[Appellant]: Yes, sir.

The Court: You do wish to testify?

[Appellant]: Yes, sir.

. . . .

[Guardian *ad Litem*]: Thank you, Your Honor. In discussions with [Appellant], he has indicated to me that apparently he does wish to testify, but he would like to do so after lunch if he could. His lunch is being delivered to him.

The Court: Very well.

. . . .

[Defense Counsel]: Your Honor, [Appellant] has indicated to the Court that he wishes to take the stand on his own behalf. That is something [Co–Counsel] and I have explained to him on innumerable occasions was not in his best interest. This is the same scheme of things that occurred in the Asha Wiley case, exactly the same thing. Your Honor, I would like to be able to tell the Court as an officer of the Court—and I do so with full knowledge of the Court's responsibilities—[Co–Counsel] and I will refuse to call him to the stand.

If the Court wishes to call him under Rule 614, the extraordinary circumstances that 614 notices, that obviously would be the Court's option. [Co–Counsel] and I, however, feel that under our constitutional oath as his attorneys, we cannot put him on the stand without him harming his case so irreparably as to void any meaningful consideration to guilt or innocence in this matter.

... But if that is [Appellant's] wish, we will respectfully and honorably decline the opportunity to call him.

. . . .

The Court: All right. I'm going to go along—inasmuch as [Appellant] has to consider these matters over lunch, I'm going to have the other matter to consider, whether or not I will exercise under the appropriate rule to call him as the Court's witness. All right. So you have three things to consider now. So any questions, [Appellant]?

[Appellant]: (No response)

The Court: All right. Let me restate the three things you need to consider. One is whether you wish to testify as a witness. Two, whether you wish to give the final argument after the case is closed. And three, knowing that your attorneys would decline to call you as a witness, whether you want the Court to call you as a witness.

Those are the three things that you need to consider. Any questions?

[Appellant]: No, sir.

The Court: Very good. I'll see you after lunch.

(R. 2186–95).

Following the lunch recess, the trial proceedings continued as follows:

[Defense Counsel]: Judge, if I could just briefly—we talked briefly at the bench about my request for a continuance to get a psychiatrist here to determine the competency of [Appellant] to make this decision [about whether to testify]. I concede to the Court that we don't have a case in the country that says we're allowed to do that, but this is a rather unique situation that I would make that request. In the alternative I would request that the Court have [Appellant] proffer his testimony to make sure that it's not going to be the kind of testimony that would erode the integrity of these proceedings.

The Court: I understand. On the first, I understand that he has been examined.

. . . .

All right. And on the second, I think that's how we're going to proceed.

. . . .

I'm going to ask the Defendant if he wishes to testify. And if he tells me so, I'm going to call him as a Court's witness. And he's going to be on the stand, and he's going to be under oath. I have no idea what he wants to testify to. It's his right, his absolute right, to testify if he wants to, provided that his testimony is material, relevant, and the probative value outweighs any prejudice to his case. In making that decision, I'll hear what he says. . . . [Appellant], do you understand your right to testify or not to testify under our Constitution?

[Appellant]: Yes, sir.

The Court: Have you discussed with your lawyer and others whether you should testify or not testify?

[Appellant]: Yes, sir.

234

The Court: And what has their advice been? What has their advice been? What have they advised you?

[Appellant]: Not to testify.

The Court: Now, I'm going to ask you—because it is your decision—do you wish to testify?

[Appellant]: Yes, sir.

The Court: All right. You understand that whatever you have to say must be relevant, admissible, and its probative value, meaning its value to the decision of the issues in this particular case, must outweigh any prejudicial value. You understand?

[Appellant]: Yes, sir.

. . . .

The Court: All right. And again, I understand that the Defense has advised [Appellant] not to take the stand and testify?

[Defense Counsel]: We have, Your Honor, yes, sir.

(R. 2193–98).

Thereafter, outside the presence of the jury, the trial judge called Appellant as a court's witness, first asking Appellant to proffer his testimony. The in camera examination by the trial judge is as follows:

Q. All right. You understand that you are under oath?

A. Yes, sir.

. . . .

Q. And you are the defendant in this case?

A. Yes, Your Honor.

Q. And you wish to testify?

A. Yes, sir.

Q. What's the testimony you wish to give?

A. About the murders in Anderson County.

Q. Pardon?

A. The murders in Anderson County, sir.

Q. Murders? Both murders?

A. Right.

Q. No. What's the testimony you want to give us about the death of Kwana Burns? .

A. Okay. That will be fine, sir.

Q. What do you want to testify to?

A. To what happened, sir.

Q. Pardon?

A. To what happened.

Q. And what are you going to testify to?

A. About the killing of Kwana Burns.

Q. You're what?

A. The killing of Kwana Burns.

Q. What are you going to testify to? What is the testimony you're going to give?

A. I just said it, Judge.

Q. If that's all you say, that's no probative value. I want to hear your testimony. I want to find out if it's relative [sic], material and non-prejudicial.

A. That is my testimony, Your Honor.

Q. Then you don't testify.

(R. 2199–2200).

The trial judge determined Appellant would not be called as a court's witness based on the outcome of the proffer. The trial judge stated:

In light of [Appellant's] reluctance to offer anything in a particular way or of a particular nature that would actually be material to the charges in this indictment and any of the issues raised in this matter other than a generalization, and being asked on more than one time to make or to give testimony that would be relevant, material and probative without prejudicial value outweighing that probative value, the Court finds that [Appellant] has exercised his right to testify and declined to testify to anything that would be helpful to the jury in reaching the issues in this case. Having so exercised his rights and declined to give anything of material value to the jury, in determining the issues of the case as required by [Rules] 401 and 402, [SCRE], the Court finds that whatever probative value [of] the general-

ization without any specificity ... is substantially out-weighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, and also undue delay, waste of time, and needless presentation. Rule 403, South Carolina Rules of Evidence.

. . . .

This is the guilt phase when the proof must be upon the State beyond a reasonable doubt or something that is material, relevant and probative not exceeded by the preju-dicial value. So I do find that—and I have tried to give [Appellant] every opportunity to testify to something that would be admissible.

A defendant, like any other witness, if he testifies, he has the right to testify under our rules of evidence and proce-dure in law and not to—what is it—use it as a forum to do anything he would like. I don't know if he wanted to do that or not, but I asked him at least once, maybe twice or three times, what would be his testimony, what would he proffer, what would he offer. And that's the same thing that I'm going to have to know before I permit any testimo-ny.

(R. 2201–03).

Through his Guardian *ad Litem*, Appellant timely objected to the trial court's ruling:

[Appellant]: Your Honor, I just want to, for the record, I just want to go ahead and object to the Court's decision under Rule—excuse me—under the Constitution's Sixth and Fourteenth Amendments.

The Court: All right. What was the testimony you were going to give?

[Appellant]: As I said, Your Honor, I was going to testify about—

The Court: What is that testimony? What is that testimo-ny?

[Appellant]: About the details of the case.

The Court: What are the details?

[Appellant]: That's for me to say on the stand, Your Honor.

The Court: Sir?

[Appellant]: That's for me to say on the stand, Your Honor.

The Court: No, sir. Unfortunately—or rather fortunately, it's not for you to testify to anything you want to, but it has to be something—remember those three things, material, relevant, and not prejudicial or the probative value not outweighed by the prejudice.

[Appellant]: Your Honor, I never said I was going to testify to anything. That was you saying.

The Court: It's not mine, sir. It's the law. Anything else?

[Appellant]: No, sir.

The Court: All right. I'll note your objection. Thank you very much. Anything else? I note that the State feels that the Court has erred too in—what is it—limiting the testimony of [Appellant] only to those matters that would be relevant, material, and probative value outweighed— not outweighed by the prejudice.

(R. pp. 2203–05).

Appellant was not permitted to testify. The defense rested without presenting any evidence, and the jury deliberated only eleven minutes before returning a guilty verdict.

When proceedings reconvened two days later for the penalty phase of Appellant's trial, the trial judge *sua sponte* clarified his decision to prohibit Appellant from testifying:

All right, there are certain matters that I need to clarify from our proceedings Friday. The Court has a grave responsibility to assure that justice be done in every case if it can be done according to law. And Friday [Appellant] advised the Court that he chose to exercise his right to testify, and the Court permitted him to testify except the Court did what it would do on any case out of the presence of the jury, have an in-camera hearing as to what the testimony might be. The reason for that, of course, is our rules of evidence in South Carolina, and particularly Rules 401, 402 and 403. Because it's not just what somebody wants to say; it's whether what somebody wants to say is material—or excuse me, relevant, material, and even if relevant, is there any—if the prejudicial value outweighs any probative value to be admissible.

So I trust the record will reflect—and I can't remember how many times I asked [Appellant], once he was on the stand—to proffer his testimony as to what he wished to

testify. And if my recollection is correct, it was to a general matter of, about the death of the victim. Obviously he did not give any specifics as to what would be presented, so the Court had no way to rule on the admissibility of such evidence. And no evidence or no testimony was suggested or was offered that the Court could let it go forward to the jury. The Court made every effort to see if there was something that would be admissible under our rules of evidence, and [Appellant] declined to give the Court any assistance in that matter, and therefore, disallowed his— just did not permit him to testify to something that the Court could not, in response to its duty to see that justice is done in every case, could exercise that awesome responsibility.

I do note that—what is it—the right of the defendant to testify is well established in *[Rock] v. Arkansas,* ... a 1987 case. The court there knew or addressed the situation when there was a per se rule against admissibility. In other words, the rule in Arkansas at the time was that, I think, it was post-hypnotic testimony would not be admissible per se. In other words, without consideration. There the court said that that was a violation of the defendant's right to testify. In so doing, the—not only did the majority, five of the [United States] Supreme Court at that time, noted—note that in the exercise of this right, the accused, as is required of the state, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. . . . The Constitution does not in any way relieve a defendant from compliance with, quote, rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.

The Court, in the exercise of its discretion, its well in light of the grave responsibility to assure that justice is served, complied in its opinion with its duty. I might note that also, considering the nature of this particular Defendant's propensity to say things that would obviously not be in his best interest, although he would like to do it perhaps or has done it in the past, this Court does not feel that this would be in ... [Appellant's] best interest and would be prejudicial. And which I say, 401 is relevant evidence, 402 is material to

the particular issues, and 403, Rule 403, although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. And in this case, since nothing was offered that would be any different from what had already been addressed in the—as far as evidence is concerned, the Court found that even that, if anything, would be cumulative.

So as far as the efforts to have [Appellant] exercise his rights were not successful. The Court stands by its ruling. (R. 2249–53).

As noted, Appellant was convicted and sentenced to death.

## B.

### Preliminary Procedural Issues

Appellant argues the trial court erred in failing to honor his request to testify in his own defense and that such error is not subject to harmless-error analysis. With great respect for the able trial judge, we are constrained to agree.

The State presents two arguments to avoid this issue on direct review, preferring that it be considered in a postconviction relief (PCR) proceeding. First, the State argues that because the objection to the trial court's failure to call Appellant as a court's witness was made by Appellant and his Guardian *ad Litem* and not by defense counsel, Appellant's claim is not preserved for appellate review based on the prohibition against hybrid representation. The State next argues that it was not the *trial court's* responsibility to call Appellant as a witness; rather, Appellant's right to testify in his own defense was denied by *defense counsel's* refusal to call him as a witness for strategic reasons. Therefore, the State argues once again that the appropriate procedure for reviewing counsel's strategic decision is through the PCR process. We disagree.

"There is no constitutional right to hybrid representation either at trial or on appeal." *Jones v. State,* 348 S.C. 13, 14, 558 S.E.2d 517, 517 (2002); *see State v. Stuckey,* 333 S.C. 56, 57–58, 508 S.E.2d 564, 564 (1998) (finding there is no right to hybrid representation under either the United States

or the South Carolina constitutions and refusing to consider substantive documents not submitted through counsel). We find it is inappropriate to invoke the prohibition against hybrid representation here based on the absence of an objection by counsel, particularly since counsel acknowledged to the trial court Appellant's desire to testify yet expressly refused to comply with those wishes. Moreover, we are presented with a unique situation involving the appointment of a Guardian *ad Litem* to assist Appellant. Appellant, directly and through his guardian, objected to the trial court's refusal to permit him to testify.[1] We further note that the State, to its considerable credit, urged the trial court to honor Appellant's request to exercise his constitutional right to testify. We fully appreciate the State's issue preservation argument and its concomitant desire to have this issue vetted in a post-conviction relief action where a petitioner must typically establish prejudice resulting from constitutionally deficient representation. Given the circumstances of this case, however, we find the issue is preserved for direct review

■ Next, regarding the State's argument that Appellant's claim is not a trial court error and therefore not reviewable on direct appeal, we acknowledge there is no absolute rule as to whether a denial of the right to testify is properly analyzed as a constitutional error on direct appeal or as an ineffective assistance of counsel claim in the context of a PCR proceeding. *See, e.g., United States v. Teague,* 953 F.2d 1525, 1535 (11th Cir.1992) ("Where the defendant claims that this right [to testify] was violated by defense counsel, this claim is properly framed as a claim of ineffective assistance of counsel."); *Ortega v. O'Leary,* 843 F.2d 258, 263 (7th Cir.1988) (reviewing trial court's denial of petitioner's request to testify in the habeas corpus context and acknowledging that such an error was reviewable on direct appeal); *Passos–Paternina v. United States,* 12 F.Supp.2d 231, 240 (D.P.R.1998) (recognizing that the right to testify exists independently of the right to counsel and stating "[r]egardless of whether the denial of the

---

1. We reiterate Appellant's timely and specific objection to the trial court's ruling: "Your Honor, I just want to, for the record, I just want to go ahead and object to the Court's decision under Rule—excuse me—under the Constitution's Sixth and Fourteenth Amendments." (R. 2203–04).

right to testify can be ascribed to defense counsel's conduct, the deprivation complained of is not effective assistance but the right to testify, and the right to testify itself is constitutionally protected"); *Rossignol v. State*, 152 Idaho 700, 274 P.3d 1, 7 (Ct.App.2012) ("[T]he issue of the failure of a defendant to testify may be viewed ... either as a claim of ineffective assistance of counsel or as a claim of a deprivation of a constitutional right.... [T]he appropriate inquiry depends on how the claim is pled and argued....").

Given the circumstances before us, we find Appellant's claim is proper for review on direct appeal. The record before the Court is adequately developed to permit full consideration of Appellant's claim. Indeed, the pertinent facts are undisputed—Appellant was properly informed of his right to testify, sought to invoke it, and was prevented from doing so through the refusal of both counsel and the trial court to call him as a witness during the guilt phase of his capital murder trial. A post-conviction relief hearing is unwarranted because it is not necessary to resolve a factual dispute and would not aid in our application of the law. Further, Appellant's claim is (and has consistently been) presented not as an ineffective assistance of counsel claim, but rather, as an error committed by the trial court in excluding Appellant's testimony, which is not an appropriate basis for an ineffective assistance of counsel claim. *See Wolfe v. State*, 326 S.C. 158, 162, 485 S.E.2d 367, 369 n. 2 (1997) ("[T]rial court error does not constitute an appropriate basis for a finding of ineffective assistance of counsel.") Accordingly, we conclude review on direct appeal is proper and turn now to the merits of the claim.

## C.

### The Exclusion of Appellant's Testimony

■ The right of a criminally accused to testify or not to testify is fundamental. *Rock v. Arkansas*, 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) ("[F]undamental to a personal defense ... is an accused's right to present his own version of the events *in his own words*." (emphasis added)). "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Id.* at 53, 107 S.Ct. 2704 (quoting *Harris v. New York*, 401 U.S. 222, 230, 91 S.Ct. 643, 28

L.Ed.2d 1 (1971)). "The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution." *Id.* at 51, 107 S.Ct. 2704. "It is one of the rights that 'are essential to due process of law in a fair adversary process.'" *Id.* (quoting *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). "The right to testify is also found in the Compulsory Process Clause of the Sixth Amendment, which grants a defendant the right to call 'witnesses in his favor,' a right that is guaranteed in the criminal courts of the States by the Fourteenth Amendment." *Id.* at 52, 107 S.Ct. 2704 (citing *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)). "The opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." *Id.* "'The choice of whether to testify in one's own defense ... is an exercise of [that] constitutional privilege.'" *Id.* at 53, 107 S.Ct. 2704 (quoting *Harris*, 401 U.S. at 230, 91 S.Ct. 643) (omission in original). "'A person's right ... to be heard in his defense—a right to his day in court—[is] basic in our system of jurisprudence; ....'" *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (quoting *In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (emphasis omitted)).

 However, the right to present testimony is not without limitation. "The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Rock*, 483 U.S. at 55, 107 S.Ct. 2704 (quoting *Chambers*, 410 U.S. at 295, 93 S.Ct. 1038). "But restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve." *Id.* at 55–56, 107 S.Ct. 2704. "In applying its evidentiary rules a State must evaluate whether the interests served by a rule justify the limitation imposed on the defendant's constitutional right to testify." *Id.* at 56, 107 S.Ct. 2704. Evidence rules which "'infringe upon a weighty interest of the accused'" but fail to serve any legitimate interest are arbitrary. *Holmes v. South Carolina*, 547 U.S. 319, 324–26, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (quoting *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998)).

 It is clear from the record that defense counsel actively thwarted Appellant's desire to testify. Although, as a practical matter, preventing Appellant from testifying may have been an advantageous strategic decision, it had no basis in the law. The circumstances of this case are particularly disturbing, given that Appellant disagreed with counsel's recommendation not to testify, unambiguously indicated to the trial court that he wished to take the stand, and vociferously· objected to the trial court's decision not to permit him to testify. It is also clear from the record that the trial judge appeared willing to call Appellant as a court's witness, but ultimately declined to do so because during the peculiar proffer procedure, Appellant indicated his intention to testify about the crime. It is apparent the trial court, like defense counsel, was operating under the paternalistic belief that it wanted to protect Appellant from potentially undermining his own defense.[2]

To be sure, Appellant's testimony may have been prejudicial to his case but that cannot serve as a basis for the trial court to prevent him from taking the stand. The trial court's thorough colloquy with Appellant demonstrates the trial court well understood the fundamental nature of the right to testify and that the decision rested solely with Appellant. *See Rock,* 483 U.S. at 50, 107 S.Ct. 2704 ("[P]ermitting a defendant to testify advances both the 'detection of guilt' and 'the protection of innocence.'" (quoting *Ferguson .v. Georgia,* 365 U.S. 570, 581, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961))); *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("It is also recognized that the accused has the ultimate authority to make certain·fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.").

---

**2.** We recognize that counsel for an accused has a duty to prevent false testimony. Here, Appellant's attorneys refused to call him to the stand because they felt that his proposed testimony, though relevant, would not be to his advantage. This is not a decision for defense counsel to. make. While defense counsel will provide the accused with his or her best judgment and recommendation, the ultimate decision of whether an accused will testify in his or her defense·rests exclusively with the accused.

Other than a paternalistic desire to protect Appellant from himself, there was no basis upon which the trial court could have appropriately found Appellant's testimony to be irrelevant and therefore inadmissible. Rather, we find the logical relevancy of Appellant's testimony is self-evident—it pertained to the killing of the victim, which was the precise basis for the prosecution. Indeed, it is difficult to fathom anything more logically connected to the fundamental issue in this capital murder trial than a defendant's own testimony about the killing. *See United States v. Walker*, 772 F.2d 1172, 1179 (5th Cir.1985) ("Where the very point of a trial is to determine whether an individual was involved in criminal activity, the testimony of the individual himself must be considered of prime importance."); *see also McKaskle v. Wiggins*, 465 U.S. 168, 177, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) ("[T]he right to speak for oneself entails more than the opportunity to add one's voice to a cacophony of others."). This is particularly true given the lenient standard for admissibility—namely, that evidence is relevant if it has "*any* tendency to make the existence of *any* fact ... more probable or less probable...." Rule 401, SCRE (emphasis added); *see State v. Wiles*, 383 S.C. 151, 158, 679 S.E.2d 172, 176 (2009) ("Evidence is relevant and admissible if it tends to establish or make more or less probable the matter in controversy."); *State v. Beck*, 342 S.C. 129, 134–35, 536 S.E.2d 679, 682 (2000) (finding accused's statements were "highly probative" of whether the accused committed the crime charged and noting "as a general rule" such evidence is admissible). Therefore, we find the trial court erred in preventing Appellant from testifying on the basis of relevance.

Further, although the trial judge relied upon Rule 403, SCRE, as an additional basis for excluding Appellant's testimony, it is clear his ruling was erroneously based upon his concern that Appellant's testimony would be prejudicial to Appellant. Again, while this concern may have been well founded, it is not a proper basis for disallowing the testimony of the accused. Thus, we find it was error to exclude Appellant's testimony pursuant to Rule 403, SCRE. *See State v. Stokes*, 381 S.C. 390, 404, 673 S.E.2d 434, 441 (2008) (" 'Unfair prejudice [within the meaning of Rule 403, SCRE,] means an undue tendency to suggest a decision on an improper basis.' ")

(quoting *State v. Dickerson,* 341 S.C. 391, 400, 535 S.E.2d 119, 123 (2000)). Regardless of whether a defendant's decision to testify is to his own detriment, "it 'must be honored out of that respect for the individual which is the lifeblood of the law.'" *Dearybury v. State,* 367 S.C. 34, 39, 625 S.E.2d 212, 215 (2006) (quoting *Faretta,* 422 U.S. at 834, 95 S.Ct. 2525); *see also Boyd v. United States,* 586 A.2d 670, 673 (D.C.Ct.App.1991) ("Although a defendant who chooses to testify may actually decrease his or her chance of acquittal, nonetheless, 'the wisdom or unwisdom of the defendant's choice does not diminish his right to make it.'" (quoting *People v. Curtis,* 681 P.2d 504, 513 (Colo.1984))); *United States v. Schrock,* 855 F.2d 327, 335 (6th Cir.1988) ("Unfair prejudice as used in Rule 403 does *not* mean the damage to a defendant's case that results from legitimate probative force of the evidence."); *People v. Dist. Ct. of El Paso Cnty.,* 869 P.2d 1281, 1286 (Colo.1994) ("Proffered evidence should therefore not be excluded by the [trial] court as unfairly prejudicial simply because it damages the defendant's case.").

 It is true that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes,* 547 U.S. at 326, 126 S.Ct. 1727. It is also true "that the Constitution permits judges 'to exclude evidence that is repetitive, only marginally relevant' or poses an undue risk of 'harassment, prejudice, or confusion of the issues.'" *Id.* However, it is also clear that "the Constitution ... prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends they are asserted to promote...." *Id.* Here, because the trial court committed an error of law in finding Appellant's testimony was irrelevant and unfairly prejudicial, such erroneous application of the Rules of Evidence cannot serve any legitimate state purpose. Having determined that the trial court's decision to prevent Appellant's testimony violated the rules of evidence and the United States Constitution, we now consider whether such error requires reversal.

We emphasize Appellant does not challenge the legitimate purposes served by Rules 401, 402, or 403, SCRE. Nor does Appellant contend any of those evidentiary rules in and of

themselves arbitrarily restrict his right to testify. Rather, Appellant claims the trial court arbitrarily *misapplied* those rules, and in committing that error of law, the trial court unconstitutionally prevented Appellant from testifying during his own trial. Thus, we need not address whether proper application of the South Carolina Rules of Evidence impermissibly restricts a defendant's constitutional right to testify.[3] Rather, the narrow issue before the Court is this: Does the erroneous application of evidentiary rules which results in the wholesale exclusion of a defendant's testimony constitute a structural error not subject to harmless-error analysis?

The State asserts that the denial of a defendant's right to testify does not in all cases render a criminal trial fundamentally unfair or call into question the reliability of the trial as a vehicle for determining guilt or innocence. Rather, the State argues, such an error is appropriately characterized as a "trial error" which is subject to the harmless-error doctrine. We disagree.

Most trial errors, even those which violate a defendant's constitutional rights, are subject to harmless-error analysis. *See Arizona v. Fulminante*, 499 U.S. 279, 306–07, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (recognizing that most constitutional errors are subject to harmless-error analysis and do not automatically require reversal of a conviction) (citing *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). Indeed, "the harmless-error doctrine is essential to preserve the 'principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than the virtually inevitable presence of immaterial error.' " *Id.* at 306–08, 111 S.Ct. 1246 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

However, despite the strong interests upon which the harmless-error doctrine is based, there are certain consti-

---

**3.** We do not suggest that a defendant's testimony is not subject to the rules of evidence. Indeed, our findings should not be taken as a restriction of the trial court's ability to constrain a defendant's testimony based on a *proper* application of evidentiary rules.

tutional rights which are " 'so basic to a fair trial that their infraction can never be treated as harmless error.' " *Id.* (quoting *Chapman*, 386 U.S. at 23, 87 S.Ct. 824). "These are structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards" and which "affect[ ] the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 309–10, 111 S.Ct. 1246. " 'Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.' " *Id.* at 310, 111 S.Ct. 1246 (quoting *Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). Essentially, an error is structural if it is "the type of error which transcends the criminal process." *Id.* at 311, 111 S.Ct. 1246.

The Supreme Court has found "an error to be 'structural,' and thus subject to automatic reversal only in a very limited class of cases." *Neder v. United States*, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting *Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)); *see also United States v. Gonzalez–Lopez*, 548 U.S. 140, 150, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (*erroneous* disqualification of counsel of choice); *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable-doubt instruction); *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury); *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial); *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased trial judge).

The Supreme Court has not directly addressed whether a trial court's improper refusal to permit a defendant to testify in his own defense is a structural error or one which is subject to harmless-error analysis. We find this error is not amenable to harmless-error analysis and requires reversal without a particularized prejudice inquiry. *See Gonzalez–Lopez*, 548 U.S. at 150, 126 S.Ct. 2557 ("We have little trouble concluding that erroneous deprivation of the right to counsel of choice,

'with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as structural error.' ... Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe." (quoting *Sullivan,* 508 U.S. at 282, 113 S.Ct. 2078)); *see also Neder,* 527 U.S. at 8–9, 119 S.Ct. 1827 ("[Structural] errors deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence and no criminal punishment may be regarded as fundamentally fair.' " (quoting *Rose,* 478 U.S. at 577–78, 106 S.Ct. 3101)); *Sullivan,* 508 U.S. at 281–82, 113 S.Ct. 2078 ("Denial of the right to a jury verdict of guilt beyond a reasonable doubt is ... a 'basic protection' whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function. The right to a trial by jury reflects, we have said, 'a profound judgment about the way in which the law should be enforced and justice administered.' The deprivation of that right, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as a 'structural error.' " (quoting *Duncan v. Louisiana,* 391 U.S. 145, 155, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968))); *Rock,* 483 U.S. at 51 n. 9, 107 S.Ct. 2704 ("This right [to testify] reaches beyond the criminal trial: the procedural due process required in some extrajudicial proceedings includes the right of the affected person to testify."); *Vasquez,* 474 U.S. at 264, 106 S.Ct. 617 ("[T]he difficulty of assessing [the error's] effect on any given defendant[ ] requires our continued adherence to a rule of mandatory reversal."); *Luce v. United States,* 469 U.S. 38, 41–42, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (noting that ascertaining prejudice requires "the court [to] know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify" and finding an "appellate court could not logically term 'harmless' an error that presumptively kept the defendant from testifying"); *McKaskle,* 465 U.S. at 177 n. 8, 104 S.Ct. 944 ("Since the right of self-representation is a right that when exercised usually *increases* the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." (emphasis added)); *Witherspoon v. Illinois,* 391 U.S. 510, 522

n. 22, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) ("[T]he jury-selection standards employed here necessarily undermined the very integrity of the process that decided the petitioner's fate.... To execute this death sentence would deprive him of his life without due process of law."); *United States v. Walker*, 772 F.2d 1172 (5th Cir.1985) (reversing defendant's conviction and remanding the case for a new trial where the trial court abused its discretion in denying defendant's motion to reopen trial to allow defendant to testify which was made after the defense rested but before closing arguments or jury instructions); *State v. Hampton*, 818 So.2d 720, 729 (La.2002) *("Rock* thus spoke of the right to testify as among those rights that *'are essential to due process of law in a fair adversary process.'* Therefore, such language unmistakably places the defendant's right to testify among those protections without which a criminal trial is 'structurally flawed.' " (quoting *Rock*, 483 U.S. at 52, 107 S.Ct. 2704)); *State v. Dauzart*, 769 So.2d 1206, 1210 (La.2000) ("No matter how daunting the task, the accused therefore has the right to face jurors and address them directly without regard to the probabilities of success. As with the right to self-representation, denial of the accused's right to testify is not amenable to harmless-error analysis."); *State v. Rosillo*, 281 N.W.2d 877, 879 (Minn.1979) ("[T]he right to testify is such a basic and personal right that its infraction should not be treated as harmless error."); *Irwin v. State*, 400 N.W.2d 783, 785 (Minn.Ct.App.1987) ("Because [a criminal defendant's right to testify] is a basic right, fundamental to a fair trial, prejudice need not result in order to require a new trial. The denial itself is sufficient.").

▮ In sum, we are persuaded that the right of an accused to testify in his defense is fundamental to the trial process and transcends a mere evidentiary ruling. An accused's right to testify "is either respected or denied; its deprivation cannot be harmless." *McKaskle*, 465 U.S. at 177 n. 8, 104 S.Ct. 944. As such, the error is structural[4] in that it is " 'so basic to a fair trial that [its] infraction can never be treated as harmless

---

4. A trial court's discretion in the conduct of the trial and the admission of evidence is in no manner diminished merely because the underlying assignment of error relates to a matter deemed structural. The finding of a structural error simply renders the harmless error doctrine unavailable on appellate review.

error.' " *Fulminante*, 499 U.S. at 289, 111 S.Ct. 1246 (quoting *Chapman*, 386 U.S. at 23, 87 S.Ct. 824).

## III.

Accordingly, we reverse Appellant's conviction and sentence and decline to reach the remaining issues, save one. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing that an appellate court need not address remaining issues when resolution of a prior issue is dispositive). The one issue we elect to address concerns the admissibility of mitigation evidence offered by Appellant during the sentencing phase of the trial. Appellant presented the expert testimony of Dr. Nicholas Cooper–Lewiter, from whom defense counsel attempted to elicit testimony that Appellant had been diagnosed with bipolar disorder. The State objected, arguing Dr. Cooper–Lewiter was not qualified to diagnose Appellant with any mental illness. The trial judge sustained the State's objection, finding bipolar disorder is "a medical condition that requires expert testimony," and that Dr. Cooper–Lewiter was not qualified to diagnose such a condition because he did not possess a medical degree. The State now concedes the trial court erred in excluding Dr. Cooper–Lewiter's testimony as to Appellant's bipolar disorder diagnosis but urges us to find the error harmless. Given the necessity of a new trial, we do not reach the question of harmless error. We do find, however, that the proffered testimony was clearly admissible and remind the State and the bench that due process requires that defendants be accorded considerable latitude in the presentation of mitigation evidence. *See Porter v. McCollum,* 558 U.S. 30, 130 S.Ct. 447, 454–55, 175 L.Ed.2d 398 (2009) (finding even where mental health evidence does not rise to the level of establishing a statutory mitigating circumstance, it may nonetheless be considered based on constitutional requirement that " 'the sentence in capital cases must be permitted to consider any relevant mitigating factor' " (quoting *Eddings v. Oklahoma,* 455 U.S. 104, 112, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982))); *Skipper v. South Carolina,* 476 U.S. 1, 5, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) (noting that where the prosecution specifically relies on an aggravating factor, it is not only *Lockett* [*v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) ] and

*Eddings* that require that a defendant "be afforded an opportunity to introduce evidence on this point; it is also the elemental due process requirement that a defendant not be sentenced to death 'on the basis of information which he had no opportunity to deny or explain'" (quoting *Gardner v. Florida,* 430 U.S. 349, 362, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977))).

This matter is remanded for a new trial.

**REVERSED AND REMANDED.**

TOAL, C.J., PLEICONES, BEATTY and HEARN, JJ., concur.