# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

James L. Carrier, Respondent,

v.

State of South Carolina, Petitioner.

Appellate Case No. 2019-001090

---

## ON WRIT OF CERTIORARI

---

Appeal from Greenwood County
Brian M. Gibbons, Post-Conviction Relief Judge

---

Opinion No. 6030
Heard September 14, 2023 – Filed October 25, 2023

---

## REVERSED

---

Attorney General Alan McCrory Wilson and Assistant
Attorney General Zachary William Jones, both of
Columbia, for Petitioner.

Appellate Defender Lara Mary Caudy, of Columbia, for
Respondent.

---

**GEATHERS, J.:** In this post-conviction relief (PCR) action, Petitioner, the State of
South Carolina (the State), seeks review of an order granting Respondent James L.
Carrier's PCR application on the ground of ineffective assistance of counsel. The
State argues the PCR court erred in finding Carrier's trial counsel was ineffective in

failing to present evidence to support a motion to quash Carrier's indictment.  We reverse.

## FACTS

The Greenwood County Grand Jury indicted Carrier twice for lewd act upon a child: once in October 2009 and again in June 2012.[1]  Both indictments listed Christopher Haden, a former deputy of the Greenwood County Sheriff's Office (the GCSO), as the witness who presented the case to the grand jury.[2]  The parties agree on appeal that Haden was not actually present before either grand jury and indeed that he never testified before a grand jury during his time as a deputy at the GCSO, despite the indictment purporting otherwise.  It is still unknown who exactly testified before the grand jury.

Shortly before jury selection, Carrier's trial counsel moved to quash the second indictment and for Carrier to be tried on the first indictment instead.  Trial counsel predicated this motion on the assertion that Haden was not employed at the GCSO at the time of presentment to the grand jury, but counsel did not substantiate this claim with evidence.[3]  The court denied the motion, noting, "The indictment itself sets forth the allegations for listing of a witness on the form, on the back of the indictment.  If that is inaccurate, without any further showing[,] [that] would not be sufficient to render the indictment defective."  The case proceeded to trial, and Carrier was found guilty and sentenced to fifteen years' imprisonment.

Carrier appealed his conviction to our supreme court, which heard the appeal in 2014.  *State v. Carrier*, Op. No. 2014-MO-043 (S.C. Sup. Ct. filed Oct. 22, 2014).  Carrier argued that the indictment was defective based on the erroneous listing of Haden's name.  At oral argument, the justices lamented the lack of evidence from the trial level, positing that whether Haden was present before the grand jury "goes to whether the indictment was proper."  The court affirmed Carrier's conviction in a

---

[1] The second indictment was a direct indictment that the solicitors sought for the purpose of expanding the time frame in which the alleged lewd act occurred.

[2] Haden was the officer who investigated and arrested Carrier.

[3] Trial counsel later testified at the PCR hearing that he was under the impression that the first indictment did not share the same deficiency as the second indictment and that had he known, he "would have moved to quash both indictments."

per curiam opinion, which did not reach the merits of Carrier's claim. Using string cites, the court noted "the burden is on the defendant to prove facts upon which a challenge to the legality of the grand jury proceedings is predicated." *Id.* at *1 (quoting *State v. Batchelor*, 377 S.C. 341, 344, 661 S.E.2d 58, 59 (2008)). The court also cited to *State v. Brownfield*, in which it had held that "where a motion to quash an indictment is unsupported by evidence, 'it cannot be held to have been denied erroneously.'" *Carrier*, Op. No. 2014-MO-043 at *1 (quoting *State v. Brownfield*, 60 S.C. 509, 515, 39 S.E. 2, 4 (1901)).

Carrier applied for PCR in November 2014.[4] Through counsel, he filed an amended application in October 2018 alleging ineffective assistance of counsel. Trial counsel testified to the PCR court that both indictments would have been quashed had trial counsel produced evidence to establish that Haden did not testify to the grand jury. The PCR court found that "Haden did not testify before [either] grand jury . . . and this evidence was available to trial counsel at the time of trial." The court also concluded that the indictment was facially invalid due to its failure to comply with section 14-7-1550 of the South Carolina Code (2017).[5]

Performing a *Strickland*[6] analysis, the PCR court found that Carrier "met his burden [of] showing . . . counsel's performance was deficient[] and . . . that he was

---

[4] Carrier's initial application claimed his detention was unlawful, owing to "[n]o evidence," "[n]o pro[of]," and "[n]o wit[nesses]."

[5] Section 14-7-1550 provides:

> The foreman of the grand jury or acting foreman in the circuit courts of any county of the State may swear the witnesses *whose names shall appear on the bill of indictment* in the grand jury room. No witnesses shall be sworn except those who have been bound over or subpoenaed in the manner provided by law. In order to obtain attendance of any witness, the grand jury may proceed as provided by the South Carolina Rules of Civil Procedure and Sections 19-9-10 through 19-9-130.

(emphasis added).

[6] *Strickland v. Washington*, 466 U.S. 668 (1984).

prejudiced by counsel's deficient performance during the trial of this matter." It also concluded that trial counsel's error resulted in a failure to properly preserve the issue of the defective indictment for direct appeal.

Finally, the PCR court also analyzed the ineffective-assistance-of-counsel claim through the lens of fundamental and structural errors as an alternative to a finding of prejudice. Pointing to "the clear directives [regarding structural errors] set forth in *Rivera*, *Fulminante*[,] and *Chapman*,"[7] the court concluded that "even the existence of overwhelming evidence against [Carrier] cannot subvert the fundamental nature of such an error that cuts straight to the pillars of our democracy[] and the requirements of the law." This appeal followed.

## ISSUES ON APPEAL

1. Did the PCR court err in finding that Carrier was entitled to PCR due to trial counsel's failure to call a witness during a motion to quash?

2. Did the PCR court err as a matter of law in finding an incorrect name being listed on Carrier's indictment amounted to a structural error requiring a new trial?

## STANDARD OF REVIEW

"Our standard of review in PCR cases depends on the specific issue before us. We defer to a PCR court's findings of fact and will uphold them if there is evidence in the record to support them." *Smalls v. State*, 422 S.C. 174, 180, 810 S.E.2d 836, 839 (2018). "However, [we] will reverse the lower court's decision if it is controlled by an error of law." *Milledge v. State*, 422 S.C. 366, 374, 811 S.E.2d 796, 800 (2018). "We review questions of law de novo, with no deference to trial courts." *Smalls*, 422 S.C. at 180–81, 810 S.E.2d 836 at 839–40.

## LAW AND ANALYSIS

The PCR court found that Carrier's trial counsel's failure to present evidence to support the motion to quash constituted ineffective assistance of counsel. We reverse the PCR court because it erroneously found that Carrier established prejudice and that the flawed indictment constituted a structural error.

---

[7] *State v. Rivera*, 402 S.C. 225, 741 S.E.2d 694 (2013); *Arizona v. Fulminante*, 499 U.S. 279 (1991); *Chapman v. California*, 386 U.S. 18 (1967).

"A criminal defendant is guaranteed the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution." *Taylor v. State*, 404 S.C. 350, 359, 745 S.E.2d 97, 101 (2013) (citing U.S. Const. amend. VI). "In order to establish a claim for ineffective assistance of counsel, the applicant must show that: (1) counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) counsel's deficient performance prejudiced the applicant's case."[8] *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). "The [applicant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

## I. Structural Defect

Prejudice in ineffective-assistance-of-counsel claims is typically analyzed using a harmless error framework. *Chapman v. California*, 386 U.S. 18, 21–22. (1967). However, a class of errors known as structural defects are not analyzed under the harmless error framework and are sometimes presumed prejudicial.[9] "[D]espite the strong interests upon which the harmless-error doctrine is based, there are certain constitutional rights which are so basic to a fair trial that their infraction can never be treated as harmless error." *State v. Rivera*, 402 S.C. 225, 247–48, 741 S.E.2d 694, 705 (2013) (citing *Chapman*, 386 U.S. at 23). These "structural defects" only occur when an error affects "the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499

---

[8] The State does not contest on appeal the PCR court's finding that trial counsel's performance was deficient. Accordingly, that finding is the law of the case, and our analysis will focus on the prejudice prong of the *Strickland* analysis. *First Union Nat'l Bank of S.C. v. Soden*, 333 S.C. 554, 566, 511 S.E.2d 372, 378 (Ct. App. 1998) ("It is a fundamental rule of law that an appellate court will affirm a ruling by a lower court if the offended party does not challenge that ruling. Failure to challenge the ruling is an abandonment of the issue and precludes consideration on appeal.").

[9] Before *Weaver v. Massachusetts*, 582 U.S. 286 (2017), courts often treated structural errors as immune to the need for a prejudice analysis. However, in *Weaver*, the Court found that violation of the right to a public trial, although structural, "does not always lead to a fundamentally unfair trial," meaning the burden of proving prejudice remained. *Id.* at 304.

U.S. 279, 310 (1991). Structural defects comprise "a very limited class of cases." *Rivera*, 402 S.C. at 247, 741 S.E.2d at 705 (2013) (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999)). "When a structural error is raised in the context of an ineffective . . . assistance claim, . . . finality concerns are far more pronounced." *Weaver v. Massachusetts*, 582 U.S. 286, 305 (2017). In *Weaver*, Justice Alito, concurring in judgment with the majority, restated the *Strickland* standard:

> In short, there are two ways of meeting the *Strickland* prejudice requirement. A defendant must demonstrate either that the error at issue was prejudicial or that it belongs to the narrow class of attorney errors that are tantamount to a denial of counsel, for which an individualized showing of prejudice is unnecessary.

*Weaver*, 582 U.S. at 308 (Alito, J., concurring in judgment).

The Supreme Court has identified a narrow set of scenarios that are structural errors as a matter of law and automatically warrant a presumption of prejudice. *Id.* at 301 (majority opinion) (noting three examples of structural errors: biased judges, exclusions of grand jurors based on race, and failures to give reasonable-doubt instructions). Beyond this, the Court has identified three "*Weaver*" categories in which structural errors tend to fall: (1) violations of rights designed to protect some interest of the defendant other than his interest against erroneous convictions; (2) errors with unmeasurable effects; and (3) errors that necessarily result in fundamental unfairness. *Id.* at 295–96.

In the present case, the PCR court erred in concluding that the erroneous listing of Haden's name on the indictment constituted a structural error. We find no authority declaring a misnomer on an indictment to be a structural error as a matter of law. This means we must look to the categories in *Weaver* to consider whether a misnamed witness on an indictment is a structural error. The first *Weaver* category encompasses violations of rights designed to protect some interest of the defendant other than his interest against an erroneous conviction. The classic example of such a right is the right to testify at one's own criminal trial, which when exercised "usually increases the likelihood of a trial outcome unfavorable to the defendant" and thus is designed to protect an interest *other than* the interest against an erroneous conviction. *Id.* at 295 (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984)). Here, the right to an indictment, as well as the right to a grand jury, *are* rights designed to protect against erroneous convictions. This means they are not the sort of right covered by the first *Weaver* category.

Looking to the second category, which encompasses errors that result in effects too difficult to measure, the effects of this error are not fatally difficult to measure. The trial court could have modified the indictment pursuant to its powers under section 17-19-100 of the South Carolina Code (2017)[10] or the State could have simply obtained another indictment had the trial court seen it fit to quash one or both of them. Despite the misnomer, the trial proceeded in the exact same fashion as it would have without it.

Finally, the third category includes errors that "always result in fundamental unfairness." *Weaver*, 582 U.S. at 296. The wrong name of a presenting witness listed on the indictment did not create any fundamental unfairness for Carrier, who we note challenges the fairness of his trial *solely* because of the erroneous listing of Haden and on no other basis of unfairness or impropriety in the trial process. Although the State's error departed from the statutory requirements governing indictments, it did not create any unfairness for Carrier throughout the trial.[11]

---

[10] Section 17-19-100 provides:

> *If (a) there be any defect in form in any indictments* or (b) on the trial of any case there shall appear to be any variance between the allegations of the indictment and the evidence offered in proof thereof, *the court before which the trial shall be had may amend the indictment* (according to the proof, if the amendment be because of a variance) *if such amendment does not change the nature of the offense charged.*

(emphases added).

[11] The State violated the statutory requirement that sworn witnesses be named on the indictment. Though the violation was not prejudicial in this instance, we are deeply concerned about the State's disregard for the sanctity of the grand jury process and note that grand juries are not "mere plaything[s] of prosecutors." *State v. Thompson*, 305 S.C. 496, 502, 409 S.E.2d 420, 424 (Ct. App. 1991) (quoting *State v. Capps*, 276 S.C. 59, 67, 275 S.E.2d 872, 875 (1981) (Lewis, C.J., dissenting)). Violating statutory requirements for grand juries *can* be prejudicial, such as when a defendant shows that a solicitor appeared as the sole witness before the grand jury. *See State v. Anderson*, 312 S.C. 185, 187, 439 S.E.2d 835, 836 (1993) ("[W]e take this

For the foregoing reasons, we hold the PCR court erred in finding that Haden's name being on the indictment constituted a structural error. Next, we must consider the State's argument that Carrier failed to make a sufficient showing of prejudice.

## II. Prejudice

The State contests the PCR court's alternative finding that even if the error was not structural and prejudice could not be presumed, the flawed indictment still prejudiced Carrier. We agree with the State for three reasons: (1) the indictment was legally sufficient as a matter of law, notwithstanding the misnomer; (2) an amendment to the indictment was likely more appropriate than quashing; and (3) the State likely would have obtained another indictment if the trial court had chosen to quash it.

"To prove prejudice, an applicant must show there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different." *Franklin v. Catoe*, 346 S.C. 563, 571, 552 S.E.2d 718, 723 (2001). "A reasonable probability is a probability sufficient to undermine confidence in the outcome [of a trial]." *Strickland*, 466 U.S. at 694. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696. "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.*

We turn first to the legal sufficiency of the indictment to gauge the likelihood that a show of evidence from trial counsel would have led the trial court to grant the motion to quash the indictment.

### A. Legal Sufficiency of the Indictment

The State argues that Carrier's motion to quash would have necessitated evaluating the indictment's legal sufficiency and that the motion would have been denied.

---

opportunity to explicitly prohibit the practice of prosecutors appearing as the sole witness before the grand jury.").

"In determining whether an indictment meets the sufficiency standard, the court must look at the indictment with a practical eye in view of all the surrounding circumstances." *State v. Gentry*, 363 S.C. 93, 103, 610 S.E.2d 494, 500 (2005). "When a defendant timely moves to quash an indictment . . . the [trial] court must determine whether the defendant[']s constitutional right to have the criminal allegations against him weighed by a properly constituted grand jury has been violated." *State v. Shands*, 424 S.C. 106, 119, 817 S.E.2d 524, 531 (Ct. App. 2018) (quoting *Evans v. State*, 363 S.C. 495, 510, 611 S.E.2d 510, 518 (2005)). "[A]n indictment is a notice document. The primary purpose . . . of an indictment [is] to put the defendant on notice of what he is called upon to answer . . . ." *Edwards v. State*, 372 S.C. 493, 496, 642 S.E.2d 738, 739 (2007). Specifically, an indictment must "apprise [the defendant] of the elements of the offense and . . . allow him to decide whether to plead guilty or stand trial, and . . . enable the circuit court to know what judgment to pronounce if the defendant is convicted." *Id.* Additionally,

> [e]very indictment shall be deemed and judged sufficient and good in law which, in addition to allegations as to time and place, as required by law, charges the crime substantially in the language of the common law or of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood and, if the offense be a statutory offense, that the offense be alleged to be contrary to the statute in such case made and provided.

S.C. Code Ann. § 17-19-20 (2017).

In *Evans*, our supreme court delineated three categories of challenges to indictments and their sufficiency. 363 S.C. at 510, 611 S.E.2d at 518. The first category pertains to grand juries "which [are] established or constituted illegally." *Id.* Indictments issued by these illegally constituted grand juries are "insufficient . . . as a matter of law . . . to give the required notice to a defendant" and are "deemed a nullity." *Id.* "In such cases, a defendant[']s challenge 'does not assert a disqualification which affects only a member of a body otherwise lawful, nor a mere irregularity in doing [that] which the law requires[.]'" *Id.* (quoting *State v. Edwards*, 68 S.C. 318, 322, 47 S.E. 395, 396 (1904), *overruled on other grounds by Evans*, 63 S.C. at 510 n.7, 611 S.E.2d at 518 n.7).

The second category focuses on "lesser irregularit[ies]" such as "proving the disqualification of an individual grand juror." *Id.* at 512, 611 S.E.2d at 519.

Finally, the third category encompasses cases in which "a defendant . . . assert[s] a truly minor irregularity in the functioning or processes of the grand jury." *Id*. at 512–13, 611 S.E.2d at 519. For the third category of cases, "[t]he circuit court ordinarily should not quash an indictment when a defendant . . . asserts a truly minor irregularity in the grand jury process." *Id*. at 513, 611 S.E.2d at 520; *see, e.g.*, *State v. Orr*, 189 S.C. 1, 199 S.E. 865 (1938) (rejecting challenge to grand jury based on some paper ballots having red lines while others had blue lines in contravention of a statute requiring ballots be on same type of paper); *State v. Jeffcoat*, 26 S.C. 114, 1 S.E. 440 (1887) (rejecting challenge to grand jury drawn before effective date of new statute changing time for court to be held).

Carrier challenges a minor irregularity in the form of the indictment, not the legality of the grand jury as a whole or even the disqualification of a single juror. The challenge here is a minor, technical irregularity like those in the third *Evans* category. This makes it doubtful the trial court would have quashed the indictment even on a show of evidence about the name being incorrect.

Though the indictment did not comply with section 14-7-1550 (requiring sworn witnesses be listed on the front of an indictment), we agree with the State that Carrier did not show a reasonable probability of a different outcome because, in light of section 17-19-20 and the case law for evaluating sufficiency, the motion to quash likely would have failed even if his trial counsel substantiated the motion to quash with more evidence.

B. Amendments to Indictments

The State also argues Carrier was not prejudiced because the trial court could have simply amended the indictment pursuant to the following statute:

> *If (a) there be any defect in form in any indictments* or (b) on the trial of any case there shall appear to be any variance between the allegations of the indictment and the evidence offered in proof thereof, *the court before which the trial shall be had may amend the indictment* (according to the proof, if the amendment be because of a variance) *if such amendment does not change the nature of the offense charged.*

S.C. Code Ann. § 17-19-100 (emphases added). The statute provides further that "[a]fter such amendment[,] the trial shall proceed in all respects and with the same consequences as if the indictment had originally been returned as so amended . . . ."

Courts of this state have historically permitted amendments under section 17-19-100 to correct a range of errors of form, including inserting the omitted name of a law enforcement agent serving as a witness (*State v. Batson*, 261 S.C. 128, 198 S.E.2d 517 (1973)), swapping out the named owner of stolen property with the name of the actual owner (*State v. Sweat*, 221 S.C. 270, 70 S.E.2d 234 (1952)), correcting the name of the listed victim (*State v. Jones*, 211 S.C. 319, 45 S.E.2d 29 (1947)); *State v. McGill*, 191 S.C. 1, 3 S.E.2d 257 (1939)), and changing defective times and dates listed in indictments (*State v. Richey*, 88 S.C. 239, 70 S.E. 729 (1911); *State v. May*, 45 S.C. 509, 23 S.E. 513 (1896)).

The type of error at hand here—the appearance of the wrong name of a testifying witness on the indictment—is virtually indistinguishable from the errors in the above cases. It is merely one of form, the amendment of which would have no bearing on the rest of the trial process. Such an amendment would not have changed the nature of the offense charged. We agree with the State that Carrier cannot establish a reasonable probability of a different trial outcome when the court could have amended the indictment. The trial would have proceeded as it did.

C. <u>Prejudice on Appeal</u>

Finally, the PCR court found that Carrier was prejudiced by his trial counsel's deficient performance because "[t]rial [c]ounsel's failure to call witnesses or present evidence to support his motion did not properly preserve the issue for appellate review."

Our supreme court did not hold that Carrier's appeal was unpreserved but did affirm Carrier's conviction due in part to a lack of evidence for it to consider. *See Carrier*, Op. No. 2014-MO-043 at *1 ("[T]he argument of counsel is not evidence and, standing alone, provides no support for a finding of fact . . . ." (citing *Shinn v. Kreul*, 311 S.C. 94, 102, 427 S.E.2d 695, 700 (1993))). "To properly preserve an issue for review[,] there must be a contemporaneous objection that is ruled upon by the trial court." *State v. Sweet*, 374 S.C. 1, 5, 647 S.E.2d 202, 205 (2007). Because Carrier's trial counsel raised the issue of the indictment and it was ruled on, the appeal was properly preserved.

As for the lack of evidence on direct appeal, "the ultimate focus of inquiry must be on the fundamental fairness of the *proceeding whose result is being challenged*." *Strickland*, 466 U.S. at 696 (emphasis added). Here, Carrier's ineffective assistance claim is challenging the fundamental fairness of the trial, not the fundamental fairness of his subsequent appeal. The approach taken by the PCR court diverges from a plain reading of *Strickland* and would jeopardize the requirement that errors be preserved for appeal. *See generally Carratelli v. State*, 961 So. 2d 312, 323 (Fla. 2007) (holding that a defendant alleging failure to preserve reversible error in jury selection for appeal "had a trial that was presumptively reliable" and that it was the trial whose result was being challenged); *Anderson v. State*, 467 So. 2d 781, 787 (Fla. Dist. Ct. App. 1985) ("The preservation of error rule [under any other approach to *Strickland*] would have no real consequence as it would apply only when counsel failed to preserve points which would not have merited a reversal in any event.").

## CONCLUSION

Carrier has not challenged the factual sufficiency of the indictment, nor did he offer any evidence to the PCR court that the grand jury process was flawed beyond Haden's name being erroneously listed. The gravamen of Carrier's argument is not that an improper witness testified before the grand jury, it is simply that the indictment did not properly list the name of the sworn witness who did.

For the foregoing reasons, we find that Carrier has failed to show a reasonable probability that the outcome of his trial would have been different had his trial counsel supported the motion to quash the indictment with evidence. Therefore, his ineffective-assistance-of-counsel claim must fail. The PCR court erred in concluding that Carrier established prejudice.

Accordingly, the PCR court's order granting Carrier's application for PCR is

**REVERSED.**

**THOMAS and KONDUROS, JJ., concur.**