# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

Ashley Eugene Moore, Respondent.

Appellate Case No. 2013-002309

_____

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

_____

Appeal from Spartanburg County
Roger L. Couch, Circuit Court Judge

_____

Opinion No. 27602
Heard May 19, 2015 – Filed January 27, 2016

_____

## REVERSED

_____

Attorney General Alan Wilson, Assistant Attorney
General Mary Williams Leddon, and Assistant Attorney
General Joshua L. Thomas, all of Columbia, for
Petitioner.

Appellate Defender Laura R. Baer and Assistant Public
Defender Dayne C. Phillips, both of Columbia, and
Carmen V. Ghanjehsani, of Richardson Plowden &
Robinson, P.A., of Columbia, for Respondent.

_____

**JUSTICE KITTREDGE:**  Respondent Ashley Eugene Moore was convicted of trafficking in cocaine base and possession of a firearm during the commission of a violent crime.  On appeal, Moore argued that the trial court erred in denying his motion to suppress the admission of a large quantity of crack cocaine and a firearm, both of which were seized during a traffic stop.  A majority of the court of appeals' panel reversed, finding that officers did not have reasonable suspicion to continue to detain Moore once the initial purpose of the traffic stop was concluded.  *State v. Moore*, 404 S.C. 634, 746 S.E.2d 352 (Ct. App. 2013).  We granted the State's petition for a writ of certiorari.  In light of the standard of review, we reverse the court of appeals and reinstate Moore's convictions and sentence.

## I.

On June 30, 2010, Deputy Dale Owens of the Spartanburg County Sheriff's Office was patrolling the I-85 corridor along with his supervisor, Corporal Ken Hancock.  At around 1:10 a.m., Deputy Owens observed Moore driving northbound on the interstate and visually estimated that he was travelling in excess of the posted speed limit.  Deputy Owens pulled onto the interstate, "paced"[1] Moore's vehicle, and determined that Moore was driving ten miles over the speed limit.  Deputy Owens initiated a traffic stop.  Moore turned on his left turn signal and appeared to move to the left; however, he then turned on his right turn signal and slowly pulled over.

Deputy Owens approached the passenger side of Moore's vehicle, observed Moore talking on the phone, and requested that Moore end the call.  Deputy Owens immediately smelled an odor of alcohol coming from the vehicle, and Moore readily admitted to having a couple of drinks.  Deputy Owens then asked Moore for his driver's license and registration.  Moore produced his driver's license and a rental agreement for the vehicle.  The vehicle had been rented by a third party in Morganton, North Carolina, the previous afternoon.

At the direction of Deputy Owens, Moore exited the vehicle; however, Moore left the door of the vehicle open and had to return to shut it.  Moore then lit a cigarette and consented to a pat down, which yielded a "wad" of approximately $600 in cash

---

[1] Pacing is a tool where a law enforcement officer maintains a constant distance behind another vehicle for a certain period of time in order to measure the vehicle's speed.

in Moore's pocket. Moore stated he was unemployed. Moore further informed the officers he was driving from Lawrenceville, Georgia, which is a suburb of Atlanta, on his way to visit his grandmother in Marion, North Carolina.

Deputy Owens then administered a series of three field sobriety tests. Moore passed two of the three tests. Based on these results, Deputy Owens did not arrest Moore for driving while impaired and opted to give him a warning instead. However, Deputy Owens asked Moore for consent to search the vehicle. Moore declined to consent to a search.

At that point, approximately fifteen to sixteen minutes into the traffic stop, Corporal Hancock requested that Deputy Jason Carraway, a drug-detection canine handler, respond to the scene. When Moore learned that a canine unit was en route, he smoked another cigarette. Deputy Carraway arrived approximately sixteen minutes later. The canine alerted to the presence of drugs in Moore's rental vehicle.

Deputy Owens and Corporal Hancock then began a search of the vehicle, which resulted in the seizure of two containers filled with a large quantity of crack cocaine, a loaded semiautomatic handgun, and $4,000.

Moore was arrested and charged with trafficking in cocaine base in excess of 400 grams and possession of a firearm during the commission of a violent crime. Prior to trial, Moore moved to suppress the evidence seized from his vehicle, arguing the officers did not have reasonable suspicion to continue to detain him after the decision was made not to arrest him for driving while impaired.

During the suppression hearing, Deputy Owens testified in detail about his observations during the traffic stop and identified a number of indicators of reasonable suspicion, summarized as follows: (1) Moore initially turned on his left turn signal but then pulled his vehicle over to the right; (2) the time Moore took to pull over was longer than average, indicating the possibility of flight; (3) Deputy Owens noticed an odor of alcohol emanating from the vehicle, which led him to believe that Moore had been drinking in order to calm his nerves; (4) Moore smoked several cigarettes, which was also an indicator that he might be trying to calm his nerves; (5) Moore continued to talk on the phone during the traffic stop, which was an indicator of criminal activity as phones provide a means of communication between drug traffickers; (6) Moore's hands were shaking when he handed Deputy Owens his driver's license and rental agreement; (7) Moore's pulse

appeared to be rapid; (8) Moore's breathing was heavy; (9) Moore tried to pick up his cell phone when he was asked to exit his vehicle, also indicating the possibility of flight; (10) Moore was carrying a large sum of money in his pocket despite being unemployed; (11) Moore was driving a rental car, which was rented by a third party; and (12) Moore was leaving a suburb of Atlanta, which is a known drug trafficking hub.

The trial court denied Moore's motion to suppress, stating:

> I am required to consider the totality of the circumstances, and give due weight to the common sense judgments reached by officers in light of experience and training.
>
> In particular, the problem I have with the . . . facts that are revealed by the rental agreement indicate the rental in North Carolina on the evening, afternoon before the stop was made at one o'clock in the morning. I have my doubts that the car was driven from Morganton to Lawrenceville and back to Marion to visit a grandmother. That's a long way to go around to visit your grandmother. Morganton [to] Marion is a much shorter trip than that.
>
> So, it appears that he may have been less than truthful about the purpose of his trip. Also, for someone unemployed, to be carrying such a large amount of cash in their pocket also would obviously give a[n] officer reasonable suspicions. The other factors as noted, I have given those the weight required, and in this case I am going to refuse to suppress.

Moore proceeded to trial and was convicted of both offenses. Moore had a significant criminal record, including convictions for the possession and sale of drugs. The trial court sentenced Moore to an aggregate term of twenty-five years.

Moore appealed, contending the trial court erred in denying his motion to suppress. Specifically, Moore "argue[d] his continued detention was unlawful because the State did not present sufficient evidence to establish the police officer's reasonable and articulable suspicion of a serious crime." *Moore*, 404 S.C. at 637, 746 S.E.2d at 353. In a split decision, a majority of the court of appeals' panel reversed the trial court, holding that the "facts did not provide Officer Owen[s] with a reasonable suspicion of a serious crime." *Id*. at 644, 746 S.E.2d at 357. Chief

Judge Few dissented, finding "evidence in the record to support the trial court's factual findings." *Id.* at 645, 746 S.E.2d at 357 (citation omitted). This Court granted the State's petition for a writ of certiorari.

## II.

"'On appeals from a motion to suppress based on Fourth Amendment grounds, this Court applies a deferential standard of review and will reverse if there is clear error.'" *State v. Adams*, 409 S.C. 641, 647, 763 S.E.2d 341, 344 (2014) (quoting *State v. Tindall*, 388 S.C. 518, 521, 698 S.E.2d 203, 205 (2010)). "The 'clear error' standard means that an appellate court will not reverse a trial court's finding of fact simply because it would have decided the case differently." *State v. Pichardo*, 367 S.C. 84, 96, 623 S.E.2d 840, 846 (Ct. App. 2005) (citing *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)). Rather, appellate courts must affirm if there is any evidence to support the trial court's ruling. *State v. Provet*, 405 S.C. 101, 107, 747 S.E.2d 453, 456 (2013) (citing *State v. Brockman*, 339 S.C. 57, 66, 528 S.E.2d 661, 666 (2013)).

## III.

In reversing the trial court's finding that Deputy Owens had reasonable suspicion to further detain Moore, the State contends that the court of appeals exceeded the proper scope of review. We agree.

"The Fourth Amendment provides in relevant part that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *United States v. Jones*, 132 S. Ct. 945, 949 (2012). However, it is well-established that "[a] police officer may 'stop and briefly detain a person for investigative purposes' if he 'has a reasonable suspicion supported by articulable facts that criminal activity may be afoot.'" *Provet*, 405 S.C. at 108, 747 S.E.2d at 457 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

"Violation of motor vehicle codes provides an officer reasonable suspicion to initiate a traffic stop." *Id.* (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)). "A traffic stop supported by reasonable suspicion of a traffic violation remains valid until the purpose of the traffic stop has been completed." *Id.* (citing *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)); *see Rodriguez v. United States*, 135 S. Ct. 1609, 1616 (2015) (holding that even a *de minimis* extension of a traffic

stop is unconstitutional absent reasonable suspicion).  However, "[o]nce the underlying basis for the initial traffic stop has concluded, it does not automatically follow that any further detention for questioning is unconstitutional." *Pichardo*, 367 S.C. at 99, 623 S.E.2d at 848.  "'[T]he officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring.'"  *Id.* (quoting *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998)).

"The concept of reasonable suspicion, like probable cause, is not 'readily or even usefully, reduced to a neat set of legal rules.'"  *Sokolow*, 490 U.S. at 7 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).  "The test whether reasonable suspicion exists is an objective assessment of the circumstances; the officer's subjective motivations are irrelevant."  *Provet*, 405 S.C. at 108, 747 S.E.2d at 457 (citing *Ohio v. Robinette*, 519 U.S. 33, 38 (1996)).  "[C]ourts must give due weight to common sense judgments reached by officers in light of their experience and training."  *State v. Taylor*, 401 S.C. 104, 113, 736 S.E.2d 663, 667 (2013) (citing *United States v. Perkins*, 363 F.3d 317, 321 (4th Cir. 2004)).  At bottom, in evaluating whether an officer possesses reasonable suspicion, this Court must "consider 'the totality of the circumstances—the whole picture.'"  *Sokolow*, 490 U.S. at 8 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

Here, while the court of appeals' panel majority properly set forth the standard of review, it failed to follow the standard of review.  As correctly noted by Chief Judge Few, the majority of the court of appeals panel reweighed the facts and substituted its de novo judgment.  The question before the court of appeals was whether there was any evidence to support the trial court's finding of reasonable suspicion—not the court of appeals' independent view of the facts.  *See Provet*, 405 S.C. at 107, 747 S.E.2d at 456 ("We affirm if there is any evidence to support the trial court's ruling." (citing *Brockman*, 339 S.C. at 66, 528 S.E.2d at 666)).  While we acknowledge that many of the factors offered by the State seem innocent when viewed in isolation, there is evidence to support the trial court's finding of reasonable suspicion to prolong the traffic stop given the totality of the surrounding circumstances.

In evaluating whether reasonable suspicion existed for Deputy Owens to prolong the traffic stop, the trial court first noted the large sum of money found in Moore's pocket, finding it was unusual and therefore suspicious for an unemployed person to carry such a large amount of cash.  We agree with the trial court that, under the circumstances of this case, the presence of a large amount of cash can be a factor

supporting reasonable suspicion. *See, e.g., United States v. Chhien*, 266 F.3d 1, 8–9 (1st Cir. 2001) (holding that the discovery of $2,000 in cash during a traffic stop supported a finding of reasonable suspicion).

Additionally, the trial court focused on Moore's unusual itinerary. The rental agreement stated that Moore's vehicle was rented to a third party in Morganton, North Carolina the day before the traffic stop. Yet, when police stopped Moore, he claimed to be traveling from Lawrenceville, Georgia, to visit his grandmother in Marion, North Carolina at approximately 1:10 a.m.—less than twelve hours after the vehicle was rented. The trial court found this circumstance also supported a finding of reasonable suspicion, noting that it would have been very unusual to drive "from Morganton to Lawrenceville and back to Marion to visit a grandmother." This unusual itinerary, coupled with the large sum of cash, and other factors, support the trial court's finding of reasonable suspicion.[2] *See United States v. Digiovanni*, 650 F.3d 498, 513 (4th Cir. 2011) (noting an unusual travel itinerary, "coupled with other compelling suspicious behavior," supports a finding of reasonable suspicion); *cf. United States v. Brugal*, 209 F.3d 353, 361 (4th Cir. 2000) ("[A] reasonable officer could conclude that few innocent travelers from New York City are traveling northbound on Interstate 95 in South Carolina at 3:30 a.m. in a vehicle rented in Miami fourteen hours earlier.").

Moore exhibited excessive nervousness in the judgment of the officer, which lends support to a finding of reasonable suspicion to prolong the traffic stop. We nevertheless comment on law enforcement's reliance on the seemingly omnipresent

---

[2] Notably, the information about Moore's peculiar itinerary was revealed *prior to* Deputy Owens' decision to issue Moore a warning ticket. Conversely, in *State v. Tindall*, the precise details of the defendant's itinerary—specifically, that he was being paid $1,500 to drive a vehicle from Atlanta to Durham—were not elicited until *after* the initial purpose for the traffic stop was complete. 388 S.C. 518, 522, 698 S.E.2d 203, 204 (2010). As these precise details were unknown to the officer at the time the initial purpose for the stop was concluded, they therefore could not have been part of the reasonable suspicion calculus in extending the stop. *See United States v. Hudson*, 405 F.3d 425, 438 (6th Cir. 2005) (noting that reasonable suspicion must rest on specific facts which are available to the officers *before* the contact at issue is initiated) (citing *Adams v. Williams*, 407 U.S. 143, 146 (1972) (explaining the reasonable suspicion determination must be made "in light of the facts known to the officer at the time")).

factor of nervousness. General nervousness will almost invariably be present in a traffic stop. At the suppression hearing, Deputy Owens gave a lengthy list of factors in support of reasonable suspicion, including many that were merely different manifestations of the element of nervousness. While nervous behavior is a pertinent factor in determining reasonable suspicion,[3] we, like many appellate courts, have become weary with the many creative ways law enforcement attempts to parlay the single element of nervousness into a myriad of factors supporting reasonable suspicion. Here, law enforcement's penchant for turning nervousness into a laundry list of factors was not necessary. The trial court properly focused not on the factor of nervousness, but rather upon the facts noted above which support a finding of reasonable suspicion that Moore was likely engaged in criminal activity.

Finally, the trial court relied on Deputy Owens' extensive experience as a law enforcement officer, especially in the area of drug interdiction. Deputy Owens testified that he has been a law enforcement officer for almost twenty years, spent seventeen years with the South Carolina Highway Patrol, received over one thousand hours of instruction in advanced criminal interdiction, and served as an instructor for the South Carolina Criminal Justice Academy in criminal interdiction and criminal patrol techniques. This extensive training and experience in drug interdiction supports the common sense judgments Deputy Owens made during the traffic stop. *See United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993) ("Reasonable suspicion is a commonsensical proposition. Courts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street.").[4]

---

[3] *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (noting nervousness is one of any number of factors that may be taken into account in deciding whether reasonable suspicion exists) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975)).

[4] In another case involving whether reasonable suspicion existed for Deputy Owens to initiate a different traffic stop, the court of appeals concluded the trial court "did not abuse its discretion in concluding reasonable suspicion existed based on the totality of the circumstances, *particularly considering* [Deputy] Owens' four years of experience as a member of the South Carolina Highway Patrol's Aggressive Criminal Enforcement Unit." *Provet*, 391 S.C. at 506, 706 S.E.2d at 519 (emphasis added) (citations omitted).

While each of the factors considered by the trial court would be, standing alone, insufficient to support a finding of reasonable suspicion, we find that the totality of factors in this case is sufficient to support the trial court's finding in light of our deferential standard of review.

## IV.

Because there is evidence to support the trial court's finding of reasonable suspicion, we reverse the court of appeals and reinstate Moore's convictions and sentence.

**REVERSED.**

**PLEICONES, C.J., Acting Justices Jean H. Toal and James E. Moore, concur. BEATTY, J., concurring in result only.**