# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Michael Milledge, Respondent,

v.

State of South Carolina, Petitioner.

Appellate Case No. 2014-002386

---

## ON WRIT OF CERTIORARI

---

Appeal from Greenville County
James R. Barber, III, Circuit Court Judge

---

Opinion No. 27784
Submitted September 21, 2016 – Filed March 14, 2018

---

## REVERSED

---

Attorney General Alan M. Wilson and Senior Assistant
Attorney General DeShawn Herman Mitchell, both of
Columbia, for Petitioner.

Appellate Defender Susan B. Hackett, of Columbia, for
Respondent.

---

**JUSTICE HEARN:** Respondent Michael Milledge was arrested and convicted of multiple drug-related offenses in Greenville County following a traffic stop. Milledge applied for post-conviction relief (PCR), arguing his defense counsel was deficient for failing to object at trial to the introduction of contraband found pursuant

to an illegal search.  The PCR court agreed and granted Milledge a new trial.  We reverse.

## FACTUAL BACKGROUND

Deputies John Lanning, Patrick Swift, and Fred Miller were on patrol in a high-crime area[1] of Greenville County when they initiated a traffic stop after observing Milledge driving with a cracked windshield and missing rearview mirror.  Upon making contact with Milledge, the deputies observed him exhibiting extreme nervousness.  Swift noted Milledge was attempting to make a call on his cellphone, but his hands were shaking so much he could not dial the right number.[2]  Swift asked Milledge why his hands were shaking and he responded it was because he was hot.  After Swift stated he too was hot but his hands were not shaking, Milledge stared straight ahead, refused to respond to any further questions, and "acted like [Swift] wasn't even there."  This behavior, coupled with the high-crime area where the stop occurred, caused Swift to fear for his safety so he asked Milledge to step out of the vehicle.[3]

After Lanning returned to the patrol vehicle but before he could perform a check on the driver's license and registration, Milledge complied with Swift's request to exit and walk towards the rear of his vehicle. Seeing that his partner had asked Milledge to exit the vehicle, Lanning ceased running the information check and approached Milledge.  Noticing Milledge would not look at him and only stared straight ahead, Lanning asked him if he had any weapons on him, using specific

---

[1] Several SWAT narcotics search warrants had recently been executed within a half-mile of their location in the weeks prior to the traffic stop, and the deputies testified to a history of "issues" in the area to which they had responded.

[2] The deputies testified they were taught in training to be alert when motorists attempted to make phone calls during traffic stops because such calls are often made to summon backup against law enforcement or for other nefarious purposes.

[3] Swift testified, "A lot of times when people are avoiding eye contact they are looking for a way out of the situation. They're already going over in their mind, I'm going to run, I'm going to fight, I'm going to do this. . . .  They're thinking about something else in their mind about what they would rather be going [sic] or what they're about to do. That's what I was thinking of when I asked [Milledge] to step out of the vehicle . . . ."

language meant to elicit some sort of response from persons being questioned.[4] Failing to get any response or reaction, Lanning decided it was necessary for the deputies' safety to conduct a pat-down search for weapons. As he began the frisk, Lanning felt what he recognized as a revolver in Milledge's shorts pocket. As Deputy Miller reached in to remove the revolver, a baggie containing pills and crack cocaine also emerged from the same pocket. The deputies then placed Milledge under arrest.

Milledge was indicted on charges of trafficking in crack cocaine; possession of a gun during the commission of a violent crime; possession of cocaine with intent to distribute; and possession of ecstasy. Prior to trial, Milledge's defense counsel made a motion *in limine* to suppress the drugs, arguing they were found as a result of an unlawful search. Defense counsel conceded the deputies had probable cause to conduct the traffic stop, but asserted the deputies lacked justification for the subsequent frisk, arguing the deputies' sole reason for conducting the frisk was because Milledge "acted nervous."

The trial court[5] denied Milledge's motion *in limine* and found the frisk was based on a reasonably articulable suspicion. The trial court held that standing alone, the individual characteristics relied on by the deputies would not support a reasonably articulable suspicion to conduct a frisk, but when considered in the aggregate, the circumstances and Milledge's conduct justified the frisk. Specifically, the trial court stated:

> Extreme nervousness, not nervousness as is customarily incident to a traffic stop but extreme nervousness to the extent that the phone couldn't be dialed. The fact that there was a phone called [sic] that being [sic] attempted at the time. The fact that it was a high drug use area, the reluctance or recalcitrance of the defendant to respond to any questions. And the dubiousness of the explanation for the shaking that the officer received when he asked for or posed the first question. All of those things in the aggregate give me cause to believe that there was probable cause for the search.

---

[4] Lanning asked Milledge if he had "any guns, knives, bazookas, anything that's going to hurt me, beat me, make me bleed."

[5] The Honorable Robin B. Stilwell presided over the trial.

Later, at trial, defense counsel did not contemporaneously object when the drugs were introduced into evidence.  The jury found Milledge guilty of all charges.

The court of appeals affirmed the trial court's findings in an unpublished opinion, holding the issue of the admissibility of the drugs was not preserved for appellate review because defense counsel failed to contemporaneously object.

Milledge then filed an application for PCR.  Milledge argued his defense counsel was deficient by failing to renew his objection to the contraband when the State entered it into evidence at trial, and Milledge suffered prejudice as a result of this failure.

The PCR court granted Milledge's application for a new trial, finding defense counsel was deficient in failing to renew his objection to the evidence at trial.  Furthermore, the PCR court held the factors asserted by the officers did not give rise to the level of reasonable and articulable suspicion required by the Fourth Amendment to conduct a frisk.  Thus, the PCR court determined Milledge suffered prejudice because there was a reasonable probability an appellate court would have found the search unreasonable.  Therefore, the PCR court concluded Milledge satisfied both prongs of the *Strickland*[6] test and granted a new trial.  The State appealed and this Court granted certiorari.

## ISSUE PRESENTED

Did the PCR court err in finding a new trial was warranted in this case because defense counsel failed to object to the admission of evidence of contraband at trial on the grounds the evidence was the result of an unreasonable search in violation of the Fourth Amendment?

## STANDARD OF REVIEW

In PCR actions, this Court will uphold the lower court's findings if there is any evidence of probative value to support them.  *Cherry v. State*, 300 S.C. 115, 119, 386 S.E.2d 624, 626 (1989).  However, the Court will reverse the lower court's decision if it is controlled by an error of law.  *Pierce v. State*, 338 S.C. 139, 145, 526 S.E.2d 222, 225 (2000).  The PCR applicant bears the burden of proving his allegations by a preponderance of the evidence.  *Frasier v. State*, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002) (citing Rule 71.1(e), SCRCP).

---

[6] 466 U.S. 668 (1984).

Generally, in supporting his allegations of ineffective assistance of counsel, the applicant must satisfy a two-prong test. *See Strickland*, 466 U.S. at 687. First, the applicant must demonstrate trial counsel's performance was deficient. *Cherry*, 300 S.C. at 117, 386 S.E.2d at 625. Second, the applicant must demonstrate trial counsel's "deficient performance prejudiced the [applicant] to the extent that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Cherry*, 300 S.C. at 117–18, 386 S.E.2d at 625 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Smith v. State*, 386 S.C. 562, 566, 689 S.E.2d 629, 631 (2010).

## LAW/ANALYSIS

The State argues the PCR court erred in finding Milledge's defense counsel was ineffective because regardless of whether counsel's performance was deficient, there was no resulting prejudice. In particular, the State contends that, even if defense counsel had renewed his objection when the evidence was presented, the trial court would have denied it, and an appellate court would have upheld the ruling on appeal. Thus, while the State does not contest the PCR court's findings regarding the first prong of *Strickland*—that Milledge's defense counsel was deficient in failing to object to the evidence when it was entered—the State contends Milledge suffered no prejudice because the search conducted by the deputies was lawful under the Fourth Amendment. We agree the appropriate inquiry is whether the search conducted by the deputies was lawful under the Fourth Amendment, as that issue would have controlled the outcome on direct appeal. We further agree with the State that the search was supported by the deputies' reasonable, articulable suspicion, and thus Milledge was not prejudiced by counsel's failure to contemporaneously object.

"[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). Upon initiating the traffic stop, a police officer may order the driver out of the vehicle in the interest of officer safety. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). In conjunction with a valid automobile stop for a traffic violation, an officer may conduct a *Terry*[7] frisk for his own safety after forming a reasonable conclusion "that the person whom he ha[s] legitimately stopped might be armed and presently dangerous." *Id.* at 112; *State v. Banda*, 371 S.C. 245, 253, 639 S.E.2d 36, 40 (2006).

---

[7] 392 U.S. 1 (1968).

Pursuant to the doctrine established in *Terry*, an officer that has initiated a legitimate stop of an individual may conduct

> a reasonable search for weapons for the protection of the police officer . . . . The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Terry*, 392 U.S. at 27. The reasonableness of the officer's actions under the circumstances must be determined based on "the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.*

One of the touchstones of *Terry* is the immediate interest of police officers in assuring themselves the person with whom they are dealing "is not armed with a weapon that could unexpectedly and fatally be used against [them]." 392 U.S. at 23. The Supreme Court warned against placing unreasonable restrictions on police officers that would require them to take "unnecessary risks" in carrying out their law enforcement duties. *Id.* After initiating a lawful traffic stop, the additional intrusion of ordering the driver to exit the vehicle is *de minimis* and can only be characterized as a "mere inconvenience . . . when balanced against legitimate concerns for the officer's safety." *Mimms*, 434 U.S. at 111 (noting a "significant percentage" of murders of police officers occur during traffic stops). Thus, the prevailing justification for conducting a *Terry* frisk is not simply crime prevention, but the more immediate need of assuring officer safety. *Terry,* 392 U.S. at 23.

In determining whether reasonable suspicion exists to perform an investigative stop and frisk without infringing upon an individual's Fourth Amendment rights, courts must consider the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 8 (1989). While the officer must be able to point to articulable facts beyond a mere unparticularized suspicion, due weight must be given to the officer's experience, training, and common-sense conclusions. *United States v. Cortez*, 449 U.S. 411, 417–18 (1981). A police officer's assessment of the circumstances may include "various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person." *Id.* at 418. In reviewing the totality of the circumstances, the individual factors of the stop must not be considered in isolation or piecemeal. *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008). Factors which alone

may not serve as proof of any illegal conduct and may appear innocent on their face can, when taken in the aggregate, give rise to reasonable suspicion. *Sokolow*, 490 U.S. at 9.

A person's presence in a known high-crime area is one relevant consideration in analyzing reasonable suspicion to conduct a *Terry* frisk. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Additionally, officers may also draw inferences and conclusions from the "extreme nervousness" of motorists during traffic stops, particularly where, in the officers' experience, the nervousness is excessive when compared to other motorists who are not engaged in criminal activity. *See State v. Provet*, 405 S.C. 101, 111–12, 747 S.E.2d 453, 459 (2013). Furthermore, an officer need not have a reason to suspect criminal activity sufficient to justify a *Terry* frisk at the outset of a traffic stop, but may develop such reasonable suspicion based on his observations while conducting the stop. *See Arizona v. Johnson*, 555 U.S. 323, 327–28 (2009).

In a case factually similar to the case at hand, the court of appeals held officers had reasonable suspicion to conduct a protective frisk of a motorist. *State v. Smith*, 329 S.C. 550, 495 S.E.2d 798 (Ct. App. 1998). In that case, police officers lawfully stopped Smith for speeding. *Id.* at 557, 495 S.E.2d at 801. As an officer approached Smith's vehicle, he noticed Smith was acting in an "edgy" manner and was looking around. *Id.* at 557, 495 S.E.2d at 802. For the sake of officer safety, the officer ordered Smith out of the vehicle and asked him whether he had any weapons on him, but Smith did not respond. *Id.* at 554, 495 S.E.2d at 800. Accordingly, the officer conducted a pat down for weapons which yielded narcotics. *Id.* Under a *Terry* analysis, the court of appeals found when the facts of that case were considered as a whole and from the viewpoint of a reasonably prudent officer, the officer had reasonable suspicion to perform the frisk. *Id.* at 557, 495 S.E.2d at 801–02.

In this case, the PCR court found the factors asserted by the deputies were not sufficient to give reasonable suspicion to conduct a protective frisk on Milledge. The PCR court cited to *State v. Tindall*, 388 S.C. 518, 698 S.E.2d 203 (2010), and *State v. Moore*, 404 S.C. 634, 746 S.E.2d 352 (Ct. App. 2013), *rev'd*, 415 S.C. 245, 781 S.E.2d 897 (2016), to support its conclusion. We find the PCR court's decision to grant a new trial is an error of law because Milledge did not meet his burden of proof to establish prejudice,[8] and the PCR court's conclusions are not supported by existing case law.

---

[8] At the PCR hearing, Milledge relied entirely on this Court's opinion in *Tindall* to

As an initial matter, the court of appeals opinion relied on by the PCR court has since been reversed by this Court. *See Moore*, 415 S.C. 245, 781 S.E.2d 897. In reversing the court of appeals, this Court found that while many of the factors asserted by the State were innocent when viewed in isolation, the totality of the surrounding circumstances supported a finding of reasonable suspicion to prolong the traffic stop. *Id.* at 253, 781 S.E.2d at 901. The Court also noted how a motorist's nervousness may impact a police officer's reasonable suspicion, cautioning law enforcement against relying on nervousness *alone* to support reasonable suspicion. Nonetheless, the Court concluded when considered in the aggregate with other circumstances, nervousness is a factor that can support a finding of reasonable suspicion. *Id.* at 254–55, 781 S.E.2d at 902.

In *Tindall*, this Court found a police officer's conduct violated the Fourth Amendment when the officer continued to question a motorist for an additional six to seven minutes *after* the purpose of the traffic stop had been accomplished, aside from issuing the ticket itself. 388 S.C. at 522–23, 698 S.E.2d at 205. The Court held after the purpose of the stop was complete, the officer did not have reasonable suspicion to continue to detain the motorist and conduct a search of his vehicle based on the information available to the officer. *Id.* at 523, 698 S.E.2d at 206. Tellingly, earlier in the stop, the officer ordered the driver out of the car and conducted a protective frisk, revealing no weapons. *Id.* at 522, 698 S.E.2d at 205. Thus it was not the protective frisk which the Court found unreasonable, but the prolonged detention of the motorist and search of his vehicle for contraband. *Id.* at 522–23, 698 S.E.2d at 205–06.

Several factors distinguish the deputies' frisk of Milledge from the search at issue in *Tindall*. The search in this case was not conducted for the purpose of discovering possible evidence of illegal activities. The motivation for the search was to ensure the safety of the deputies, and Lanning limited the search to the outer layer of Milledge's clothing. The deputies did not unduly prolong the traffic stop or detain Milledge longer than necessary to address the traffic violation. Likewise, the deputies did not detain Milledge for an excessive period in an attempt to question him and possibly gain probable cause to search his vehicle for contraband. Rather,

establish prejudice. As discussed, *infra*, the *Tindall* decision is not persuasive here because it deals with a prolonged traffic stop and search of the suspect's vehicle, not with a limited protective frisk for officer safety.

Lanning conducted the *Terry* frisk *before* he had an opportunity to check Milledge's information, issue a traffic citation, and send him on his way.[9]

When due weight is given to the deputies' training and experience, the record indicates reasonable suspicion to conduct the search existed. Both Deputy Lanning and Deputy Swift were experienced law enforcement officers[10] and possessed a familiarity with the high-crime area where the traffic stop occurred. Milledge's nervousness during the traffic stop was not the routine nervousness to be expected with every traffic stop, but was so extreme that his hands were visibly shaking and he could not dial his cellphone. Based on the deputies' training and experience, Milledge's attempt to make a phone call during the traffic stop was a relevant consideration in determining whether he posed a threat to officer safety.

After Milledge's seemingly dubious explanation for his shaking hands and subsequent refusal to respond to any further questions, Swift was entitled to take the lack of response and avoidance of eye contact into consideration in determining whether Milledge might be a danger to the deputies. In Deputy Swift's experience, a lack of response or a blank stare are indicative of an individual debating whether to "fight or flight."

Lastly, after Milledge exited the vehicle, Deputy Lanning inquired whether he had any weapons on him in a manner specifically designed to sound outrageous so as to evoke a response. While Milledge had no obligation to answer the inquiry, his

---

[9] Milledge had a history of prior convictions involving weapons and controlled substances, including 1991 convictions for carrying a concealed weapon and possession of controlled substance; a 1994 conviction for possession of a weapon during a crime; a 2001 conviction for possession with intent to distribute marijuana; a 2003 conviction for attempted trafficking in marijuana; and a 2006 conviction for possession of marijuana up to a half ounce. Had Deputy Lanning completed an information check on Milledge, it would have revealed his history of carrying weapons illegally. Inevitably, this information would have further affirmed the deputies' reasonable suspicion to conduct a pat down.

[10] Deputy Lanning had over 10 years of law enforcement experience at the time of the stop, including over two years working with the DEA violent traffic program. Deputy Swift testified about his specialized training, including narcotics schools, gang recognition classes, interview and interrogation classes, and position on the SWAT team.

lack of any response whatsoever did nothing to alleviate any apprehension the deputies had, given the high-crime area where the stop occurred. Thus, when the mosaic is considered as a whole in light of the deputies' training and experience, the deputies had reasonable suspicion Milledge was armed and dangerous sufficient to justify a frisk.

In determining whether a PCR applicant has established prejudice, the PCR court does not act as a finder of fact and substitute its judgment for that of the trial court. Rather, in instances like the case before us, the PCR court must view the trial court's ruling through the same lens that would be applied on appeal, which here requires giving appropriate deference to the trial court's findings. *See State v. Khingratsaiphon*, 352 S.C. 62, 70, 572 S.E.2d 456, 459–60 (2002) (explaining that on appeal from a Fourth Amendment motion to suppress, an appellate court will only reverse the trial court if there is clear error, and will affirm if there is any evidence to support the ruling). Based on our analysis of the cases above, we hold the proper inquiry for determining prejudice in this case is whether there is evidence in the record to support the trial court's finding the officer had reasonable suspicion. If so, an appellate court would necessarily have affirmed the trial court's denial of the motion to suppress. Thus, because there is evidence in the record to support the trial court's ruling, the PCR court erred in finding Milledge proved prejudice.


## CONCLUSION

For the foregoing reasons, we hold the PCR court erred in finding Milledge met his burden of proof to establish prejudice. The motivation of the deputies in this case is highly probative. While the protections of the Fourth Amendment may have been triggered had the deputies prolonged the detention and engaged in a search of Milledge and his vehicle for the purpose of finding evidence, the limited pat down performed by Deputy Lanning was solely for officer safety. To reach a different conclusion would prevent officers operating in similar high-crime areas from conducting a protective frisk when their specialized training indicates the person may be armed and would subject officers to the "unnecessary risks" in performing their duties the *Terry* court warned against. The decision of the PCR court is **REVERSED**.

**KITTREDGE, J., concurs. FEW, J., concurring in a separate opinion in which KITTREDGE, J., concurs. Acting Justice Pleicones, dissenting in a separate opinion in which BEATTY, C.J., concurs.**

**JUSTICE FEW:** I concur in the majority opinion. I write separately to address the manner in which an applicant may prove prejudice—and our standard for reviewing the PCR court's ruling on prejudice—under the second prong of *Strickland* on the facts and in the procedural posture of this case.

The standard of review an appellate court applies can vary depending on the facts and procedural posture of the individual PCR case. In this case, the PCR court's finding on the first prong of *Strickland* that trial counsel's performance did not meet an objective standard of reasonableness is a primarily factual determination, to which we apply the deferential standard of review applicable to a PCR court's factual findings. *See generally Jordan v. State*, 406 S.C. 443, 448, 752 S.E.2d 538, 540 (2013) ("This Court gives deference to the PCR judge's findings of fact, and 'will uphold the findings of the PCR court when there is any evidence of probative value to support them.'" (quoting *Miller v. State,* 379 S.C. 108, 115, 665 S.E.2d 596, 599 (2008))). Because there is evidence to support the PCR court's ruling on the first prong, I agree with the majority's decision to allow that ruling to stand.

As the majority explains, however, the PCR court's determination in this case as to the second prong of *Strickland* was the determination of a question of law, which we review de novo—without any deference. *Jamison v. State*, 410 S.C. 456, 465, 765 S.E.2d 123, 127 (2014). I agree with the majority's analysis of the second prong—"the search was supported by the deputies' reasonable, articulable suspicion." However, I would add to that analysis that if the issue had been preserved for direct appeal, the court of appeals would have been required by law to affirm the trial court because there was ample evidence in the record to support the trial court's finding the officers had reasonable suspicion. *See State v. Brown*, 401 S.C. 82, 87, 736 S.E.2d 263, 265 (2012) ("When reviewing a Fourth Amendment search and seizure case, an appellate court must affirm the trial court's ruling if there is any evidence to support it; the appellate court may reverse only for clear error.").

The manner in which an applicant may prove prejudice also varies depending on the facts and procedural posture of the individual PCR case. To demonstrate prejudice in this case from trial counsel's deficient failure to preserve the suppression issue for appeal, Milledge was required to show a reasonable probability the court of appeals would have reversed his conviction and remanded for a new trial if trial counsel contemporaneously objected.[11] Instead of analyzing

---

[11] A PCR applicant in this posture may also demonstrate prejudice by showing a reasonable probability the trial court would have sustained a contemporaneous

this question, the PCR court studied the record of the suppression hearing and made its own determination as to whether the officers had reasonable suspicion. To state it differently, the PCR court made the determination of how the PCR court would have ruled if the PCR court had been the trial court. This was an error of law.

If trial counsel had preserved the issue for direct appeal, the court of appeals would have applied the *Brown* "clear error" standard to the primarily factual ruling of the trial court that reasonable suspicion existed. 401 S.C. at 87, 736 S.E.2d at 265; *see also State v. Khingratsaiphon*, 352 S.C. 62, 70, 572 S.E.2d 456, 459-60 (2002) (stating the standard of review "on appeal from a motion to suppress based on Fourth Amendment Grounds" is "like any other factual finding" and an appellate court should "reverse if there is clear error" and "affirm if there is any evidence to support the ruling" (quoting *State v. Brockman*, 339 S.C. 57, 66, 528 S.E.2d 661, 666 (2000))). Therefore, although I agree with the majority that the facts and circumstances recited by the officers in this case support the existence of reasonable suspicion, the precise inquiry upon which the PCR court—and this Court—should focus is whether there is evidence in the record to support the trial court's finding of reasonable suspicion. If the PCR court had properly analyzed the court of appeals' application of its standard of review to the trial court's determination that reasonable suspicion existed, the PCR court would necessarily have found Milledge failed to prove prejudice, and thus the PCR court would necessarily have denied PCR. *See Gibbs v. State*, 403 S.C. 484, 495, 744 S.E.2d 170, 175–76 (2013) (affirming the denial of PCR on the allegation trial counsel failed to contemporaneously object to evidence discussed in a pre-trial suppression hearing where the PCR court found no prejudice because the trial court's pre-trial ruling to deny suppression was not an abuse of discretion and stating, "Thus, a contemporaneous objection by trial counsel would not have changed the outcome of Petitioner's case on appeal").

I recognize there is a potential flaw in my reasoning. I believe, however, that *Gibbs* and the following discussion demonstrate my reasoning is sound, and expose flaws in the dissent's suggestion that we should defer to the PCR court's suppression analysis instead of the analysis conducted by the trial court. The potential flaw in my reasoning is that the ruling trial counsel failed to preserve was not the trial court's pre-trial ruling that the officers had reasonable suspicion, but the mid-trial ruling the trial court would have made if trial counsel

---

objection, which in turn was reasonably likely to result in a not guilty verdict, but Milledge does not make that argument.

contemporaneously objected.  Because the mid-trial ruling was never actually made, one may argue, there is no trial court ruling to which the court of appeals would have been required to defer.  Under this circumstance, the argument continues, the PCR court was free to make a new ruling as to suppression according to its own view of the evidence.

The dissent, in apparent agreement with such an argument, would give Milledge and all future defendants a second chance to win a suppression hearing.  Then, after allowing the PCR judge to separately consider the evidence presented at the suppression hearing and make its own de novo ruling as to whether the State violated the defendant's constitutional rights, the dissent would require that this Court defer to the PCR court, not to the trial court.

I find two flaws in the dissent's approach.  First, the trial court had the benefit of watching and listening to the officers' live testimony, while the PCR court necessarily conducted its analysis on the cold record of the suppression hearing.  Deferring to the PCR court instead of the trial court in this situation is counterintuitive, because a primary reason an appellate court would give such deference in the first place is the trial court's opportunity to assess witness credibility firsthand.  *See Foye v. State*, 335 S.C. 586, 589, 518 S.E.2d 265, 267 (1999) (stating the reason appellate courts give "great deference to a [PCR] judge's findings" is because the judge has "the opportunity to directly observe the witnesses").  Second, and more importantly, under the dissent's reasoning, wise trial counsel who loses a suppression hearing would never make a contemporaneous objection, because not doing so enables the defendant to get a second chance to convince another judge to suppress the evidence in a PCR trial.  If that were the law, I would change my vote on the first prong of *Strickland*, and I would argue that counsel's failure to make a contemporaneous objection was the very reason Milledge gets a new trial, and thus counsel's decision not to object was strategic—not deficient—as a matter of law.

To avoid this flawed result, the PCR court—and this Court on certiorari—must focus on the trial court's pre-trial ruling, *see Gibbs*, 403 S.C. at 495, 744 S.E.2d at 175–76, unless the evidence in the trial itself includes a substantial reason to believe the trial court would have changed its mind when ruling on a contemporaneous objection.  If there is such a reason, the PCR court's analysis should focus on the probability the trial court would have changed its ruling; the PCR court should not conduct its own suppression analysis.  In this case, nothing changed regarding the existence of reasonable suspicion from the time of the trial court's pre-trial ruling to the point during trial when the State offered the evidence.

Thus, there is no basis on which the PCR court might suppose the trial court would have changed its ruling. Therefore, the trial court's pre-trial ruling governs, and in determining whether Milledge demonstrated prejudice, the PCR court—and this Court—may do no more than ascertain whether there is evidence in the record to support the trial court's determination that the officers' suspicion was reasonable.

**KITTREDGE, J., concurs.**

**Acting Justice Pleicones:**  I respectfully dissent, and would dismiss the writ of certiorari as improvidently granted as I find there is evidence of probative value in the record to support the post-conviction relief (PCR) judge's findings.  *Cherry v. State*, 300 S.C. 115, 386 S.E.2d 624 (1989).

Because it misstates the prejudice question, the concurring opinion challenges my conclusion that our scope of review requires we affirm the PCR judge's finding of prejudice.  The PCR judge was not asked whether counsel's deficient performance failed to preserve the ruling *in limine* for appellate review, but rather was he deficient in failing to object to the admission of the drug evidence at trial.  The prejudice question, then, is whether there is any evidence to support the PCR judge's finding that there is a reasonable probability that such a motion would have been granted and that without the drug evidence respondent would not have been convicted.  This is the issue decided by the PCR court and presented to this Court by the State on certiorari.[12] The concurring opinion evinces its misapprehension when it analyzes the prejudice issue as whether an appellate court would have reversed and remanded had the issue been preserved.  The correct prejudice question is whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

Further, since we are reviewing the PCR judge's decision, it is axiomatic that it is to that decision that we "defer" if there is any evidence to support it. Despite the concurring opinion's expressions of concern about "cold records" and attorney "sandbagging," PCR judges are routinely asked to "put themselves in the shoes" of the trial judge and, exercising their own discretion, decide whether evidence would

---

[12] It appears that the concurring opinion believes that an appellate court may revisit the arguments made by respondent at the hearing, and  criticizes the PCR judge's "erroneous as a matter of law" ruling which it finds not apt. In my view, we must take the case as the petitioner chose to preserve and present it. If the State were concerned with the manner in which the PCR judge decided the issue, the burden was on it to raise that concern to the PCR judge by a timely post-order motion. And if such a motion were made and denied, then the proper issue for certiorari would have been "Did the PCR judge err in failing to grant the State's motion and issue an amended order addressing the issue raised by Milledge at the PCR hearing?"  The State instead chose to seek certiorari to review the PCR's ruling on its merits, and while we may affirm for any reason appearing in the record, an appellate court may not ignore the issue before it in order to make the arguments it wishes had been made either at trial or by the petitioner on certiorari.

have been excluded had an objection been made.[13] *E.g., McHam v. State,* 404 S.C. 465, 746 S.E.2d 41 (2013); *Sikes v.* State, 323 S.C. 28, 448 S.E.2d 560 (1994). In this case, despite efforts to turn the question of this traffic stop into a pure question of law, it is a mixed question where the judge must view the facts in light of the law, and make a judgment call. Although I may not have reached the same conclusion, I find there is "any evidence" (i.e. facts) to support his conclusion and would therefore affirm.

**BEATTY, C.J., concurs.**

---

[13] I note that in other circumstances the PCR judge is asked to revisit a trial judge's ruling where, for example, the claim of trial counsel's deficiency is failure to state the proper grounds for a motion. *E.g., Stone v. State*, 419 S.C. 370, 798 S.E.2d 561 (2017).